WILLIAM HARMAN BLACK, Plaintiff, *v.* MARK GRAVES and Others, Individually and as Members of and Constituting the State Tax Commission, and the STATE TAX COMMISSION, Defendants.

Third Department, May 24, 1939.

*John W. Davis* [*J. Paschall Davis* and *Francis Shackelford* of counsel], for the plaintiff.

*John J. Bennett, Jr., Attorney-General* [*Joseph M. Mesnig, Assistant Attorney-General,* of counsel], for the defendants.

*Robert Abelow,* for the executors of the Estate of Edward J. Byrne, deceased, *amicus curiæ.*

The court renders judgment in favor of the defendants.

HILL, P. J., BLISS and HEFFERNAN, JJ., concur; BLISS, J., in an opinion; HEFFERNAN, J., in result for reason stated in memorandum; McNAMEE, J., dissents with an opinion, in which CRAPSER, J., concurs.

BLISS, J. (concurring). For many years the Constitution of the State of New York has provided that the compensation of all judges and justices shall not be diminished during their respective terms of office. (Const. art. VI, § 19.) On January 1, 1937, plaintiff entered upon a new term of office as a justice of the Supreme Court. At that time paragraph p of subdivision 2 of section 359 of the Tax Law expressly exempted the salary of a justice of any court in the State from inclusion in gross income under article 16 of the Tax Law which imposes a tax upon residents with respect to their income. On May 28, 1937, by chapter 744 of the Laws of 1937, a new subdivision 4 was added to section 359 so as to provide that the term "gross income" should include the salaries of judges, notwithstanding that such judges held constitutional offices and their salaries were not subject to being diminished during their terms of office. The plaintiff refused to include his official salary in gross income on his income tax return for 1937 and to pay a tax based thereon, upon the ground that chapter 744 of the Laws of 1937 was uncon-

stitutional. The defendants seek to compel its payment. The parties have submitted their controversy to us for determination.

Article 16 of the Tax Law (§ 351) imposes a tax upon every resident of the State, which tax shall be levied, collected and paid annually upon and with respect to his entire net income as therein defined. A statutory formula for the determination of a resident taxpayer's net income is set up. Not all income is to be included in the taxpayer's " gross income " (Tax Law, § 359) and many deductions are allowed in computing net income (Tax Law, § 360) while other items are not deductible. (Tax Law, § 361.) Certain exemptions are allowed. (Tax Law, § 362.) The tax is measured by the net income. (Tax Law, § 351.)

The tax is non-discriminatory and imposed on all residents alike. The power to tax is comprehensive, admitting of few exceptions, and these exceptions are rapidly disappearing with the present trend of authority. A claimed immunity from this common incident of citizenship must be clearly demonstrated to be upheld. (*Pacific Co.* v. *Johnson*, 285 U. S. 480.) It is asserted by plaintiff in this case that he has such an immunity by virtue of holding one of certain offices, of which article VI, section 19, of the State Constitution declares of their compensation that " such compensation shall not be diminished during their respective terms of office." Plaintiff contends that an income tax levied against his income may not include that part of his income which is derived from his salary as a justice of the Supreme Court of this State. This contention compels an examination of the nature and incidence of an income tax.

An income tax is an excise for the privileges and immunities which the State provides and its residents enjoy. It is not a tax on property. Nor is it a levy on the source of the income. (*New York ex rel. Cohn* v. *Graves*, 300 U. S. 308; *Helvering* v. *Gerhardt*, 304 id. 405.) It is laid upon the privilege of receiving the income and is paid from the taxpayer's private funds after he has received such income. (*Graves* v. *New York ex rel. O' Keefe*, 306 U. S. 466, decision handed down March 27, 1939.) In the case of *Hale* v. *State Board* (302 U. S. 95, 108), Mr. Justice Cardozo, writing for the majority of the court, said, in referring to the basis of an income tax: " The returns from his occupation and investments are thrown into a pot, and after deducting payments for debts and expenses as well as other items, the amount of the net yield is the base on which his tax will be assessed."

Mr. Justice Stone of the same court recently stated of an income tax: " That the receipt of income by a resident of the territory of a taxing sovereignty is a taxable event is universally recognized.

Domicil itself affords a basis for such taxation. Enjoyment of the privileges of residence in the State and the attendant right to invoke the protection of its laws are inseparable from responsibility for sharing the costs of government. ' Taxes are what we pay for civilized society * * *.' See *Compania General de Tabacos* v. *Collector*, 275 U. S. 87, 100. A tax measured by the net income of residents is an equitable method of distributing the burdens of government among those who are privileged to enjoy its benefits. The tax, which is apportioned to the ability of the taxpayer to pay it, is founded upon the protection afforded by the State to the recipient of the income in his person, in his right to receive the income and in his enjoyment of it when received. These are rights and privileges which attach to domicil within the State. To them and to the equitable distribution of the tax burden, the economic advantage realized by the receipt of income and represented by the power to control it, bears a direct relationship. * * *

" Neither the privilege nor the burden is affected by the character of the source from which the income is derived. For that reason income is not necessarily clothed with the tax immunity enjoyed by its source." (*New York ex rel. Cohn* v. *Graves*, 300 U. S. 308.)

In *Graves* v. *New York ex rel. O' Keefe* (*supra*) it was held that a tax on the salary of an employee of the Home Owners' Loan Corporation, an instrumentality of the Federal government, is laid upon " income which becomes the property of the taxpayer when received as compensation for his services; and the tax laid upon the privilege of receiving it is paid from his private funds and not from the funds of the government, either directly or indirectly."

Counsel for the plaintiff has advanced the argument that to compel a judge to include his official salary in the computation of his taxable net income impinges upon that officer's independence and that the limitation is imposed in the public interest. *Evans* v. *Gore* (253 U. S. 245) is strongly urged as controllingly persuasive because of the close analogy to the case at bar. The situation there was for our purpose identical with the one now before us and the constitutional provision in the very same words. The majority opinion traces the separation of powers in our Federal government and concludes that the primary purpose of the prohibition against diminution was not to benefit the judges but to attract good and competent men to the bench and to promote that independence of action and judgment which is essential to the maintenance of the guaranties, limitations and pervading principles of the Constitution. The limitation imposed by the Constitution was held to be in the public interest and compelling a judge to pay an income tax based in part upon his official salary was a

diminution of such salary. *Dobbins* v. *Comrs. of Erie County* (16 Pet. 435), *Collector* v. *Day* (11 Wall. 113) and *Pollock* v. *Farmers' Loan & Trust Co.* (157 U. S. 429) were the three principal cases cited in support of these conclusions. The authority of *Evans* v. *Gore* has recently been greatly weakened by the overruling of *Collector* v. *Day* and *Dobbins* v. *Comrs. of Erie County* in *Graves* v. *New York ex rel. O' Keefe* (*supra*) and the distinguishing of *Pollock* v. *Farmers' Loan & Trust Co.* in *New York ex rel. Cohn* v. *Graves* (*supra*). The weight of *Evans* v. *Gore* has thus been minimized by the United States Supreme Court itself.

Since the writing of the foregoing the United States Supreme Court has further weakened *Evans* v. *Gore* in the case of *O'Malley* v. *Woodrough* (307 U. S. 277), decided May 22, 1939. In this latter case Judge WOODROUGH was appointed a United States Circuit judge on April 12, 1933. In the joint income tax return of himself and wife for the calendar year 1936 he listed his judicial salary and claimed it to be constitutionally immune from taxation. The tax was being imposed by section 22 of the Revenue Act of 1932, re-enacted in section 22, subdivision (a)■ of the Revenue Act of 1936 which act directed the inclusion under the term " gross income " the compensation of judges of courts of the United States taking office after June 6, 1932. Inasmuch as the act of 1936 merely re-enacted the provisions of the act of 1932 with relation to the inclusion of such compensation in gross income, the constitutionality of the statute was judged on the basis of the validity of the act of 1932. The prevailing opinion of Mr. Justice FRANKFURTER states the meaning which *Evans* v. *Gore* imputed to the history which explains article III, section 1, of the Federal Constitution was contrary to the way in which it was read by other English speaking courts and calls attention to the fact that such decision has met wide and steadily growing disfavor from legal scholarship and professional opinion and had been rejected by most of the courts before whom the matter came thereafter. The reasoning of *Evans* v. *Gore* was rejected in this language: " Having regard to these circumstances, the question immediately before us is whether Congress exceeded its constitutional power in providing that United States judges appointed after the Revenue Act of 1932 shall not enjoy immunity from the incidences of taxation to which everyone else within the defined classes of income is subjected. Thereby, of course, Congress has committed itself to the position that a non-discriminatory tax laid generally on net income is not, when applied to the income of a Federal judge, a diminution of his salary within the prohibition of Article III, § 1, of the Constitution. To suggest

that it makes inroads upon the independence of judges who took office after Congress had thus charged them with the common duties of citizenship, by making them bear their aliquot share of the cost of maintaining the government, is to trivialize the great historic experience on which the framers based the safeguards of Article III, § 1. To subject them to a general tax is merely to recognize that judges are also citizens, and that their particular function in government does not generate an immunity from sharing with their fellow citizens the material burden of the government whose Constitution and laws they are charged with administering."

The court further said that to the extent that its decision was inconsistent with what was said in *Miles* v. *Graham* (268 U. S. 501) the latter cannot survive. It was said by Mr. Justice BUTLER in his dissenting opinion, " evidently the court intends to destroy the decision in *Evans* v. *Gore*." It is thus apparent that the Supreme Court itself no longer considers *Evans* v. *Gore* as authority and has repudiated its reasoning.

Also, *Evans* v. *Gore* has not been followed by our State courts with that unanimity usually accorded a decision of our highest court. (See *Taylor* v. *Gehner*, 329 Mo. 511; 45 S. W. [2d] 59; *Poorman* v. *State Board of Equalization*, 99 Mont. 543; 45 P. [2d] 307; *Martin* v. *Wolfford*, 269 Ky. 411; 107 S. W. [2d] 267.) A rule contrary to *Evans* v. *Gore* preceded it in Wisconsin in *State ex rel. Wickham* v. *Nygaard* (159 Wis. 396; 150 N. W. 513). (See, also, *Du Pont* v. *Green*, 38 Del. 566; 195 A. 273, where *Evans* v. *Gore* was criticised and its reasoning repudiated.)

The gravamen of *Evans* v. *Gore* was that the tax affected the independence of the judiciary and that, therefore, public policy demanded the construction which the court there placed upon the constitutional provision. The argument does little credit to the bench. Surely a judge is made no less independent simply because he pays the same taxes that are imposed upon all other citizens. He can be wholly independent only if he does bear his full share of the duties of citizenship including the burden of taxation. The Federal government itself has completely disposed of this theory of public policy by requiring all judges entering a term of office after June 6, 1932, to include their official salary as gross income in their income tax return. (U. S. Code, tit. 26, § 22, subd. [a].) It does not believe that the payment of an income tax by a judge upon his official salary affects his independence.

New York State has also rejected this theory of public policy. The statute here under review (Laws of 1937, chap. 744) contains a declaration of policy directly contrary to that expressed in *Evans* v. *Gore*. It declares as the policy of the State that salaries and

compensation of public officials and judges shall be subject to personal income taxation under the laws of the State, that equality of burden is a cornerstone of sound tax policy, and inequality results where the burden of taxation is unequally distributed. This declaration of the public policy of the State must be held to be paramount to the theory that the imposition of the tax affects the independence of the judiciary. Other considerations of the same nature must yield when the State has balanced them all and finds certain ones to be its policy.

The alleged advantage to the State in being able to obtain a better class of judges for the salary, if they are exempt from income tax, is too etherial and speculative and consequently too unsubstantial to form the basis for an implication of tax immunity. (*Helvering* v. *Gerhardt*, 304 U. S. 405.)

The inclusion of official salary in gross income is not in fact a diminution in salary within the constitutional provision. The income by way of judicial salary may not be affected at all or it may be affected at different rates for different judges. It is quite possible that a judge's entire salary might be expended for purposes which would be proper deductions, or, as in the case of many judges of our lower constitutional courts, it might be less than his statutory exemptions. At most it is affected but indirectly. The tax is not on the judge's compensation as such but is measured by the property of the taxpayer without regard to source. As well might it be argued that a purchaser-paid sales tax, or many other of our excises reduced a judge's salary and that he was, therefore, immune from them. The official salary is but one of many various elements that enter into the computation of net income by which the tax against the individual is measured.

The constitutional provision does not by its own language exempt a judge or his salary from taxation. There is no indication that it was intended as a limitation on the taxing power of the State over its residents. · It is only by implication that such a meaning is found. Presumably a statute is constitutional unless the contrary clearly appears and limitations on the taxing power must be interpreted narrowly. No clarity of purpose on the part of the People to render plaintiff or his official salary immune from taxation appears. No principle of public policy demands such construction by implication. The defendants should have judgment.

HEFFERNAN, J. (concurring). I concur in the result of the decision solely on the ground that the case of *Evans* v. *Gore* (253 U. S. 245) upon which the plaintiff relies has in effect been overruled by the United States Supreme Court in *O'Malley* v. *Woodrough* (307 U. S. 277).

McNamee, J. (dissenting). Plaintiff assumed office as a justice of the Supreme Court of New York on January 1, 1937. In the same year an act of the Legislature was passed, effective May twenty-eighth, requiring him to include in his gross income for the year the compensation received by him from the State for his services as such justice, for the purpose of levying an income tax in respect thereof, and the tax was levied. The plaintiff had no other income that was taxable, and refused to pay the tax on the ground that it constituted a diminution of his compensation as a justice of the Supreme Court, and also on the ground that it affects his contractual rights with the State in respect of salary already earned at the time the act was passed. The State Tax Commission threatened to enforce payment, and thereupon this action was brought on an agreed statement of facts.

Two questions arise on the controversy, as follows:

1. Do the statutes of the State of New York impose a personal income tax, under article 16 of the Tax Law, upon the salary and compensation of a justice of the Supreme Court of the State of New York?

2. Do such statutes, or their application under the facts and circumstances here agreed upon, violate any of plaintiff's rights and privileges under either the Constitution of the State of New York or the Constitution of the United States?

The legislative enactment by which, it is claimed, plaintiff's compensation is brought within the provisions of the Income Tax Law, in so far as important here, reads as follows: " The term ' gross income ' also includes salaries and compensation of all public officials and judges, notwithstanding that such public officials and judges hold constitutional offices and their salaries or compensation are not subject to being increased or diminished during their terms of office." (Laws of 1937, chap. 744, adding Tax Law, § 359, subd. 4.)

The pertinent provision of the Constitution of the State of New York, article VI, section 19, reads: " All judges, justices and surrogates shall receive for their services such compensation as is now or may hereafter be established by law, provided only that such compensation shall not be diminished during their respective terms of office."

The corresponding article of the Constitution of the United States, article III, section 1, provides: " The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behavior and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their continuance in Office."

Section 10 of article I of the United States Constitution, in so far as pertinent here, provides that "No State shall * * * pass any * * * Law impairing the Obligation of Contracts."

Thus we have raised for the first time in this State, in a plenary action, the questions above stated by counsel, and those questions in connection with the status of constitutional judges and fundamental principles of American government. We must determine here whether we have indulged, both in theory and practice, a definite understanding of the status of constitutional judges and of American government, and, if so, whether we are to abandon those basic views long maintained.

The affirmative and complete separation of the judiciary and the Legislature was an unquestioned doctrine of American government and law in the Colonial period; and it has been the theory and practice of this State and of the Federal government throughout their existence that the legislative, executive and judicial departments were not only co-ordinate but coequal branches in their respective spheres. None was dependent upon the other for its complete integrity or independence. That the King of England subjected the judges to his will was one of the basic grievances recited by the signers of the Declaration of Independence in that document. And royal proclivities of similar import have not yet wholly passed away among men. Human nature still remains unchanged. And when the People of the States created the United States, they provided for the complete and affirmative separation, integrity and independence of the judges by placing their tenure of office and fixedness of compensation beyond the power of Congress to alter the one or diminish the other " during their continuance in office."

In 1847 the Constitution of New York contained a similar provision against diminution of compensation, and like provision has continued in each succeeding Constitution. And after the Constitution of the United States had been authoritatively construed by the United States Supreme Court, against the diminution of compensation *by tax*, and its meaning clarified beyond dispute, New York changed its Constitution to make it identical, in so far as questions raised here are concerned, with that of the Federal Constitution thus construed. And until the Legislature proposed to diminish substantially the compensation of the judges of this State by the 1937 amendment to the Tax Law, when this case arose, the bench or bar, or the taxing authority of the State, had never acted in such a way as to indicate a belief that such a power resided in the Legislature. These Constitutions had not been changed in 1937, nor had their construction been altered by any

authoritative decision. And, of course, the Legislature had no more power to reduce the compensation of a judge in 1937, by taxing that compensation, than it had when the last constitutional provision became effective in 1925. Under the act of 1937 it is not the judge that is taxed, but his compensation; and this is so despite the device, or formula, or language, resorted to in arriving at the result.

It is contended by the Attorney-General that "concepts" of taxation have developed and advanced since 1925, and that a new policy of taxation was proclaimed by the Legislature in 1937; and that these new and advanced concepts and policy of taxation should be adjudged and held as law by the courts. There is nothing new or advanced in either, except the suggested determination to set aside the Constitution, and the construction placed upon its unmistakable language by the highest court in the land. Such concepts and such policies, however advanced or however popular, are mere expedients when they violate the letter and spirit of the Constitution.

Likewise, it is urged that judges should pay their share of the expenses of administering the government of the State. No *constitutional* argument is advanced to show that they are required to do so in a new or different manner, or that they do not do so. They do not pay formal taxes levied upon them as such by the Legislature, but they render services for a compensation fixed by law, which may not be diminished during their tenure of office. The government is not sustained by tax money alone; services rendered may be and often are of still greater value. Surely the soldier in the field supports his government quite as effectively as does the taxpayer. But, however that may be, the kind, the value and the extent of aid or support to be given to the State by one branch of the government may not be determined by another in the absence of clear constitutional mandate.

The tendency has become apparent from the restlessness of some people and the contention of some government officials to resort to a so-called "leveling process," so that all distinctions of station will be eradicated, whatever their nature. This, of course, is a popular-front argument, not a constitutional nor a legal one. The judicial branch of the government is the weakest of the three; not only is this true as to numbers, but it is without political power. It is quite without power to defend itself, and must rely on such protection as the Constitution throws about it. It must act not only openly and uprightly, but without fear as between the many and the few, between the powerful and the weak, in popular and unpopular causes, with no cloak of security except the justness

of its decision and the Constitution which creates and maintains it. Plaintiff's case will be regarded in some quarters and by many as an unpopular one, but this will not relieve the courts from upholding the Constitution as written by the People, and from asserting its clear mandate.

It is urged that the tax upon the compensation of the plaintiff is not a diminution of compensation but a tax such as is imposed upon others who have sources of income. The plaintiff has no taxable income except the compensation fixed by law for his judicial services. The tax involved amounts to more than $1,600, and yet it is said that his compensation is not diminished. Such a statement is a mere assertion that fails in appeal to intellectual integrity. It is his judicial compensation which the plaintiff is required to include in his gross income for the purposes of taxation. This is the compensation that is in effect taxed, as he has nothing else to tax. The Constitution of this State says that may not be done; and the particular formula used by the Legislature or the taxing authority to give outline to the proposal does not alter the nature of the act of taxing the compensation in question; and as a matter of elemental thought, any such device will not bring it into harmony with the Constitution.

To say that the tax is non-discriminatory does not add virtue to the proposal; it is irrelevant. We are dealing with the Constitution. And so, to say that it is a tax on the " right to receive and enjoy " the compensation, is trivial at best. The constitutional provision is not impotent and futile; when it guarantees a fixed compensation and guarantees the payment without diminution, it likewise guarantees the right to receive and enjoy it, as fixed and paid. The guaranty, as I see it, is not an empty gesture, but one of living force and of definite purpose and meaning. The tax in question would devitalize the force, frustrate the purpose, and obscure the meaning, and that without any *constitutional* reason.

In view of our constitutional provision, and its precise similarity to the corresponding provision of the United States Constitution, the clear course to be followed by this court in the case at bar is mapped in striking detail and clarity in the case of *Evans* v. *Gore* (253 U. S. 245). That case construes the Federal constitutional provision touching the diminution of the salaries of constitutional judges, before our present constitutional provision was adopted. This court must regard that decision as controlling. That case involved an action by a district judge of the United States to recover the Federal income tax that he was required by the Treasury Department to pay. As in the case at bar, the plaintiff there had no taxable income beyond his judicial compensation. After

an extended discussion of the Federal clause against diminution of compensation, the United States Supreme Court in *Miles* v. *Graham* (268 U. S. 508, 509) said: " The words and history of the clause indicate that the purpose was to impose upon Congress the duty definitely to declare what sum shall be received by each judge out of the public funds and the times for payment. When this duty has been complied with the amount specified becomes the compensation which is protected against diminution during his continuance in office."

And speaking of the vice of encroachment of one department upon another, the court in *Evans* v. *Gore* (*supra*, at p. 249) observed: " For otherwise the legislative department, inherently the strongest, might encroach on or even come to dominate the others, and the judicial, naturally the weakest, might be dwarfed or swayed by the other two, especially by the legislative."

There also it was said (pp. 253, 254) that: " The primary purpose of the prohibition against diminution was not to benefit the judges, but, like the clause in respect of tenure, to attract good and competent men to the bench and to promote that independence of action and judgment which is essential to the maintenance of the guaranties, limitations and pervading principles of the Constitution and to the administration of justice without respect to persons and with equal concern for the poor and the rich. Such being its purpose, it is to be construed, not as a private grant, but as a limitation imposed in the public interest; in other words, not restrictively, but in accord with its spirit and the principle on which it proceeds.

" Obviously, diminution may be effected in more ways than one. Some may be direct and others indirect, * * *. But all which by their necessary operation and effect withhold or take from the judge a part of that which has been promised by law for his services must be regarded as within the prohibition. Nothing short of this will give full effect to its spirit and principle. * * * Of what avail to him was the part which was paid with one hand and then taken back with the other? Was he not placed in practically the same situation as if it had been withheld in the first instance? Only by subordinating substance to mere form could it be held that his compensation was not diminished. Of course, the conclusion that it was diminished is the natural one."

And continuing in its discussion so pertinent to this case, the Supreme Court wrote:

" If the tax in respect of his compensation be prohibited, it can find no justification in the taxation of other income as to which there is no prohibition; for, of course, doing what the Constitution permits gives no license to do what it prohibits.

" The prohibition is general, contains no excepting words and appears to be directed against all diminution, whether for one purpose or another; and the reasons for its adoption, as publicly assigned at the time and commonly accepted ever since, make with impelling force for the conclusion that the fathers of the Constitution intended to prohibit diminution by taxation as well as otherwise — that they regarded the independence of the judges as of far greater importance than any revenue that could come from taxing their salaries."

And in language of marked finality, the court (at p. 256) speaks of the inclusiveness of this prohibition upon the legislative branch: " Certainly there is nothing in the words of the prohibition indicating that it is directed against one legislative power and not another; and in our opinion due regard for its spirit and principle requires that it be taken as directed against them all."

There is no controlling authority contrary to *Evans* v. *Gore* and *Miles* v. *Graham;* and in the light of those cases, none that is persuasive.

Assuming for the sake of discussion that we are to abandon a theory and practice of government that have been followed in this State and Nation since Colonial days, the Federal question remains, viz., whether the proposed tax may be imposed on a judge's compensation by an act passed after the compensation has been earned. As to such earlier salary an implied contract arose according to which the plaintiff was entitled to receive the compensation promised and earned, and the State was required to pay it. This contract may not be set aside by the Legislature, and plaintiff may not be deprived of his vested rights under it. The contract clause, and the due process clause, of the United States and of the State Constitutions forbid it. (U. S. Const. art. I, § 10; Const. of N. Y. art. I, § 6; Fourteenth Amendment of United States Const.; Gen. Constr. Law of New York, § 93; *Guaranty Trust Co.* v. *N. Y. & Q. C. R. Co.*, 254 N. Y. 126; *Dartmouth College* v. *Woodward*, 4 Wheat. 518, 694; *Fisk* v. *Jefferson Police Jury*, 116 U. S. 131; *Roberison* v. *Miller*, 276 id. 174; *Indiana ex rel. Anderson* v. *Brand*, 303 id. 95.) Again, mere taxing statutes passed by Congress, which were retroactive, have been held invalid by the United States Supreme Court. While a tax for a local improvement, imposed three years after the betterment, was regarded valid on the theory of a physical benefit conferred directly upon the taxpayer, as a mere *quid pro quo* (*Seattle* v. *Kelleher*, 195 U. S. 351; 25 S. Ct. 44; 49 L. Ed. 232), an act of Congress authorizing a tax upon gifts which went back ten days was held unconstitutional ( *Untermyer* v. *Anderson*, 276 U. S. 440; 48 S. Ct. 353; 72 L. Ed. 645); and so a toll imposed for the

use of a canal, two years after the use had ceased was void (*Forbes Boat Line* v. *Board of Comrs.*, 258 U. S. 338; 42 S. Ct. 325; 66 L. Ed. 647). Likewise the withdrawal of an exemption from transfer tax was held by the Court of Appeals of this State to be invalid legislation when enacted three years later in derogation of a vested right. (*City Bank Farmers' Trust Co.* v. *N. Y. C. R. R. Co.*, 253 N. Y. 49.)

The accumulated learning, experience and wisdom of 130 years were brought to bear in the decisions of the United States Supreme Court in *Evans* v. *Gore* and *Miles* v. *Graham*, which laid down in the clearest language that the compensation of a judge, protected against diminution by its constitutional provision, such as ours, is beyond the power of the legislative branch of the government. The first question propounded by counsel, and above stated, should be answered in the negative; and the second question, in the affirmative; and the plaintiff should have judgment, with costs.

CRAPSER, J., concurs with MCNAMEE, J.