Isidor Wasservogel,
Spec. Ref. Plaintiffs seek a declaratory judgment determining that an amendment (L. 1958, ch. 893) to the Employment Agency Act (General Business Law, art. 11), insofar as it reduces fees which may he charged by nurses’ registries for private duty placement of nurses (General Business Law, § 185, subd. 9, par. [1]), is unconstitutional and void. A second cause of action in plaintiffs’ complaint seeks to enjoin the enforcement of said amendment.
Despite the lengthy pleadings and the numerous defendants (21) whom plaintiffs deemed necessary to join as parties to this action, the issue involved herein is relatively simple, to wit, whether a statute limiting fees chargeable by employment agencies for placing nurses in private duty to 5% of the salary or wages received each week by the nurse (for the first 10 weeks of employment) is unreasonable and invalid. It is plaintiffs’ claim that such regulation is confiscatory and deprives them of property without due process of law.
*274 It is fundamental that legislative enactments are presumed to be constitutional and, likewise, to be supported by facts known to the Legislature (Wiggins v. Town of Somers, 4 N Y 2d 215, 218; Lincoln Bldg. Associates v. Barr, 1 N Y2d 413, 415). It is only as a last resort that courts strike down legislation on the ground of unconstitutionality (Matter of Ahern v. South Buffalo Ry. Co., 303 N. Y. 545, 555, affd. 344 U. S. 367). Concededly, while the presumption of legislative validity is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt (Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537, 540-541). The party having the burden of proving the invalidity of a statute must do so clearly and must overcome ‘ ‘ by facts judicially known or proved, not only the evidence sustaining constitutionality, but any state of facts which can be reasonably conceived to sustain it.” (16 G. J. S., Constitutional Law, § 99, p. 403 et seq.) This, plaintiffs failed to do.
The mere fact that the enactment of a statute results in reduced income, inflicts other pecuniary injury or even makes it impossible for some people to continue in business, does not establish, as plaintiffs contend, a denial of constitutional due process or equal protection under the law (infra). In determining whether statutory requirements are arbitrary, unreasonable or discriminatory, it must be borne in mind that the choice of these measures is for the Legislature, not the courts. It is presumed that the law enactment agency has investigated the subject and has acted with reason rather than from mere whim or caprice (Farrington v. Pinckney, 1 N Y 2d 74). Thus, it is a maxim of constitutional law that a Legislature is presumed to have acted within constitutional limits, upon full knowledge of the facts and with the purpose of promoting the interests of the people as a whole. These presumptions, though rebuttable, were not overcome by the proof adduced by plaintiffs upon the trial of this action.
An examination of the legislative history of the law regulating employment placement of nurses shows that the State of New York has long deemed it advisable and necessary to control the fees chargeable by nurses’ employment agencies. Accordingly, chapter 700 of the Laws of 1910, fixed the following-placement fee ceilings:
1 — nurses (except professional) —10% of the first month’s wages;
2 — all other workers (except theatrical) — (a) 10% of the first month’s salary if the employment was temporary not to exceed in a single contract one month, otherwise (b) the amount of the first week’s wages or salary;
*275 3 — for theatrical workers (except vaudeville and circus) — 5% of the engagement’s weekly wages or salary to a 10-week maximum.
In 1942 (L. 1942, ch. 908) these limitations were amended as follows:
1 — nurses (except professional) — 10% of the engagement’s wages to an amount not exceeding 10% of the first month’s wages;
2 — all other workers (except theatrical) — 10% of the engagement’s wages or salary to a 10-week maximum;
3 — theatrical workers (except vaudeville or circus) — 5% of the engagement’s wages or salary to a 10-week maximum.
Thereafter, in 1952, the law was again amended to treat practical and professional nursing placement alike and to distinguish between private duty and other types of nursing engagements (L. 1952, ch. 731). The 1958 amendment (L. 1958, ch. 893), which is the subject matter of this action, in effect, did three things:
1 — It restated and reclassified the employment categories in the prior law;
2 — It substantially restated existing fee ceilings, except for increasing the placement fees chargeable for higher-income executive, administrative, professional and clerical placements set forth in a newly enacted category.
3 — It distributed the burden of the payment for private duty nursing placement fees equally upon the nurse and her employer.
Contrary to plaintiffs’ contention, this amendment, for the first time, specifically permitted a percentage of the nursing placement fee to be charged to the employer. Although the prior law had stated that the gross fee was limited to 10% {supra) and the 1958 amendment fixed it at 5% {supra), the 1958 law, offsetting this apparent reduction, authorized nursing placement agencies to charge the 5% fee to both the employee and the employer. Thus, under this law, the total gross fee chargeable for private duty nursing placement is the same today as it was before the amendment, namely, 10% of the wages or salary, of which half only may be charged to the nurse (5%) and half may be charged to her employer.
Assuming, arguendo, however, that the new law, in effect, reduces the fee permitted to be charged by plaintiffs to a single 5% charge in lieu of a former 10% fee, in the opinion of the court, plaintiffs, nevertheless, have still failed to establish the invalidity of such statute on the ground that it is confiscatory. There can be no doubt that the employment agency business is subject to regulation both generally and as to its service fees *276 (Olsen v. Nebraska, 313 U. S. 236; Faingnaert v. Moss, 295 N. Y. 18; Abbye Employment Agency v. Robinson, 166 Misc. 820). Contrary to plaintiffs’ contention, the time has passed when courts will employ the due process clause of the Constitution to invalidate State laws regulatory of business and industrial conditions merely because such laws may be deemed unwise, improvident or out of harmony with a particular school of thought (Williamson v. Lee Optical Co., 348 U. S. 483, 488). The public welfare is a broad and inclusive concept. The Legislature, therefore, has great discretion in exercising the police power of the State, as it did in the instant case, to protect such welfare. This court may not sit as a “ superlegislature ” to weigh the wisdom of each enactment brought before it, nor depide whether the policy which it expresses offends the welfare of a particular group (Day-Brite Light., Inc. v. Missouri, 342 U. S. 421, 423). Public interest imperatively demands that legislative enactments be recognized and enforced by the courts as embodying the will of the people, unless they are plainly and palpably, beyond all question, in violation of the fundamental law of the Constitution. Such violation does not appear here.
In the case at bar, the long legislative history of the regulation of fees such as are here involved, clearly shows that the enactment of the 1958 regulatory amendment bears a very reasonable and important relation to the legislative purpose of protecting the People of this State. Even if the reasonableness of this act were debatable, any such doubt must, of necessity, be resolved in favor of the Legislature (South Carolina Highway Dept. v. Barnwell Bros., 303 U. S. 177,190-191).
It should be noted that by engaging in a business subject to regulation, plaintiffs thereby assumed the hazard of changes in the law under the exercise of the State’s police power. As heretofore stated, legislation enacted pursuant to the police power of a governing body is not rendered invalid because it imposes financial hardship, diminishes property value or reduces income, even if such injury results in irreparable damage to a particular business (California Automobile Assn. v. Maloney, 341 U. S. 105, 110; Breard v. Alexandria, 341 U. S. 622, 632-633; Day-Brite Light., Inc. v. Missouri, supra, p. 424; United States v. Central Eureka Min. Co., 357 U. S. 155, 168).
It is significant that plaintiffs in this action are only 21 among the 78 nurses’ registries licensed in New York City, with many more such licensed registries existing throughout the State who were not before the court. Apart from some evidence which indicates that they are all rather small business enterprises, plaintiffs made no attempt to show their relative status in their *277 industry. Nevertheless, regardless of size or capital investment, and whether or not plaintiffs are a representative group of the total number affected by the law in dispute, where legislation such as is here involved is aimed at a group in its entirety, it has never been a barrier to the valid exercise of police power that one member of such regulated group may suffer economic losses not shared by others of the same group (Bowles v. Willingham, 321 U. S. 503, 517; Euclid v. Ambler Co., 272 U. S. 365, 388).
Thus, in view of the legislative background of the statute here involved, the lengthy public hearings before the Joint Legislative Committee and the reports of said committee, of which the court takes judicial notice (Matter of Ricker v. Village of Hempstead, 290 N. Y. 1, 5), I find that the Legislature has acted on reasonable grounds and in a reasonable manner in enacting the law here considered. Inasmuch as plaintiffs have failed to effectively rebut the reasonableness of the statute, it may fairly be assumed that in the opinion of the Legislature, the natural consequences of their edict “ will be in the direction of betterment of public health and welfare ” (People v. Schweinler Press, 214 N.Y. 395,406).
Accordingly, upon the evidence before me, I hold that chapter 893 of the Laws of 1958, insofar as is here applicable, is a valid, constitutional and enforcible enactment of the Legislature of this State.
In view of this holding, it is unnecessary to consider whether defendants, particularly the State of New York and the Attorney-General were properly joined as parties to this action.
Judgment is rendered in favor of defendants dismissing the complaint upon the merits.
No costs are awarded.
The above constitutes the decision of the court as required by the applicable provisions of the Civil Practice Act.