Daniel T. Sweeney, on Behalf of Himself and All Other Persons Similarly Situated, Respondent-Appellant, *v.* Raymond J. Cannon, as Clerk of the Court of Appeals of the State of New York, Appellant-Respondent.

Second Department, March 29, 1965.

2

*Louis J. Lefkowitz, Attorney-General (Samuel A. Hirschowitz and Philip Weinberg of counsel), for appellant-respondent.*

*Wager & Shane (Eli Wager, David M. Shane and Jerome H. Ehrlich of counsel), for respondent-appellant.*

*Howard F. Cerny (Alden Mesrop of counsel), for Queens County Bar Association, amicus curiæ.*

Hill, J.   This action for a declaratory judgment was commenced in the Supreme Court, by an attorney admitted to practice in the courts of New York on December 9, 1957.

Among other relief, plaintiff seeks judgment declaring " Chapter 204 of the Laws of 1963, and more particularly section 74 thereof, now known as section 467-a of the Judiciary Law of the State of New York, to be in violation of the Constitution of the United States of America and the Constitution of the State of New York " and to be " null and void and of no force and effect."

Section 74 of chapter 204 of the Laws of 1963 reads as follows: " Every attorney and counsellor-at-law duly licensed and admitted to practice law in this state on the first day of September, nineteen hundred sixty-three, shall, on or before the first day of January, nineteen hundred sixty-four, file with the clerk of the court of appeals a certificate of registration upon a form which shall be furnished by the clerk, upon application therefor.   A fee of fifteen dollars shall accompany the certificate of registration when it is transmitted to the clerk of the court of appeals for filing."

On defendant's motion to dismiss the amended complaint for insufficiency, Special Term granted summary judgment to the plaintiff as follows: " Ordered and adjudged, that § 467-a of the Judiciary Law of the State of New York is declared to be

in violation of the Constitution of the United States of America and the Constitution of the State of New York and that said statute is null and void and of no force and effect."

Chapter 204 of the Laws of 1963 contains 75 sections dealing with the revision of the tax schedule on liquor and with the revisions, amendments and additions to fee schedules for licenses, permits and other service charges made by the State with respect to various professions and trades.

Section 74 of said act (L. 1963, ch. 204) added a new section — section 467-a of the Judiciary Law — quoted above. By February 28, 1964 the Clerk of the Court of Appeals had remitted $727,820 to the State Treasurer, representing the aggregate of the $15 registration fees paid by about 48,521 lawyers.

Plaintiff claims: (a) that the statute is arbitrary, capricious and unreasonable because it requires an additional registration by attorneys — they having registered at the time of admission — and discriminates unlawfully because it requires no filing fees to be paid by attorneys admitted to practice after September, 1963; (b) that the tax is confiscatory since it is a tax upon officers of the courts; and (c) that the tax is arbitrary, oppressive and violative of the Fourteenth Amendment of the United States Constitution and of various provisions of the State Constitution (art. I, §§ 6, 11; art. III, § 22; art. VI, § 25).

The registration procedure provided by this act establishes the first comprehensive, accurate and up-to-date listing of attorneys in New York State.

That the State may prescribe reasonable qualifications, both for the initial admission to the Bar and for the continuation of the right to practice law, is well settled (*Matter of New York County Lawyers Assn.* [*Roel*], 4 Misc 2d 728, affd. 3 A D 2d 742, affd. 3 N Y 2d 224, app. dsmd. 355 U. S. 604; *Matter of Cassidy*, 268 App. Div. 282, 270 App. Div. 1046, affd. 296 N. Y. 926; *Saier* v. *State Bar of Mich.*, 293 F. 2d 756, cert. den. 368 U. S. 947). As the court said in *Saier* (*supra*, p. 759) : " License to practice law, the continuation of such license, regulation of the practice and the procedure for disbarment and discipline are all matters that are within the province of an individual state." Such authority, like any licensing provision, presupposes the power to require registration as a means of establishing proof that one is a licensed attorney and to prevent frauds by means of fictitious certificates (*Voit* v. *Walsh*, 125 N. Y. S. 2d 720; *People ex rel. Chicago Bar Assn.* v. *Novotny*, 368 Ill. 536, cert. den. 323 U. S. 734).

The courts have frequently upheld statutes expressly imposing license fees or taxes on attorneys under provisions pertain-

ing to various occupations (*Clay* v. *County of Monroe,* 300 N. Y. 724; *Franklin* v. *Peterson,* 87 Cal. App. 2d 727; *Davis* v. *Ogden City,* 117 Utah 315; *Sterling* v. *City of Philadelphia,* 378 Pa. 538), or under provisions pertaining to attorneys alone (*Matter of Johnson,* 47 Cal. App. 465; *Matter of Gibson,* 35 N. M. 550 [$5 annual fee upheld]). In other words, the State has the power to impose a license fee on attorneys as a police regulation or as a revenue measure (see *Williams* v. *City of Richmond,* 177 Va. 477).

In *Matter of Johnson* (*supra,* p. 466) the court sustained, as a revenue measure, an ordinance which read: "Every person engaged in business as a lawyer, maintaining an office in said city, shall pay a license [fee] of $2.50 per month." Similarly, the courts have consistently upheld provisions adopted in about half the States in the Union which provide for an "integrated bar," that is, where every attorney admitted to practice is required to join a State Bar Association and pay dues (*Lathrop* v. *Donohue,* 367 U. S. 820 [annual fee of $15 held not unreasonable]; *State Bar of Mich.* v. *City of Lansing,* 361 Mich. 185; *Petition of Florida State Bar Assn.,* 40 So. 2d 902 [Fla.]; 7 C. J. S., Attorney and Client, § 60).

Section 467-a of the Judiciary Law requires only that attorneys file a certificate and pay a nonrecurring fee of $15, in contrast to the far more burdensome charges above mentioned. Under the circumstances, the enactment of this statute was a reasonable exercise of the Legislature's power in response to the need for an up-to-date official register of attorneys in order to prevent the unauthorized practice of law. As such, it is not violative of the due process clause. As the court said in *Wasmuth* v. *Allen* (14 N Y 2d 391, 398, app. dsmd. 379 U. S. 11): "The imposition of a new requirement for the continued practice of a profession previously carried on without the need for such requirements does not violate the Constitution".

Plaintiff argues that the statute was enacted for the purpose of raising revenue and, while conceding that lawyers are not entitled to exemption from business taxes, he argues that the instant statute "imposes upon our profession alone, an arbitrary, unreasonable, unnecessary and excessive tax, in derogation of our life time privilege to practice that profession, subject only to the maintenance of good moral character and proper professional conduct by the individual practitioner." Plaintiff contends that the fee charged has to be commensurate with the costs of the purpose to be served. In support of his contention plaintiff cites *Adlerstein* v. *City of New York* (11 Misc 2d 754, affd. 7 A D 2d 717, affd. 6 N Y 2d 740). There, pursuant

to a provision of the Administrative Code of the City of New York (L. 1937, ch. 929) for the licensing of electricians, the city sought to impose a $250 license fee on electricians. In its opinion (11 Misc 2d 754, 755) the court in that case stated: " There is accord that the section of the code is not a revenue statute. There is further agreement that the fee which may be charged for the issuance of a license is such that will compensate the licensing authority for issuing and recording the license and pay for inspection to see to the enforcing of the license provisions.''

It is therefore apparent that in *Adlerstein (supra)* the power to pass the ordinance was reviewed in its very limited aspect as an exercise of the licensing power which had been delegated to the city. This was true, also, in the other case cited in behalf of plaintiff on this point (*People* v. *Jarvis*, 19 App. Div. 466). We, on the other hand, are now dealing with a legislative enactment which suffers from no such limitation. " It is undoubtedly true that the legislature may impose on professions, callings, businesses and vocations license fees for the purpose of revenue, and though termed license fees, they are enacted not under the police power, but under the power of taxation " (*People ex rel. Moskowitz* v. *Jenkins*, 202 N. Y. 53, 59). Furthermore, as noted by the trial court in the instant case, contrary to *Adlerstein (supra)*, the amount involved here is concededly not disproportionate for a true licensing fee.

It is argued that there is no provision in the statute (L. 1963, ch. 204, § 74; Judiciary Law, § 467-a) for keeping the list up-to-date, and that consequently the list becomes less and less accurate as time goes on. This criticism would seem to be a legitimate subject for appropriate legislation in the future. It is, however, no ground for invalidating the statute to say that it leaves room for further improvement. The judiciary is not a " superlegislature to weigh the wisdom of legislation " (*Day-Brite Light.* v. *Missouri*, 342 U. S. 421, 423), and therefore plaintiff's claim that the Legislature may not have adopted the best method of achieving the desired result is no basis for constitutional objection (*Beauharnais* v. *Illinois*, 343 U. S. 250, 262).

Manifestly, in enacting this statute (Judiciary Law, § 467-a) the Legislature did not exercise its full authority to provide for continuing or recurrent registration; it merely sought thereby to weed out the names of those no longer in the profession and to obtain an accurate record of attorneys on the effective date of the statute. There was, however, nothing wrong in attempting to achieve this limited objective. In dealing with a problem the Legislature is not bound to act on an all-or-nothing basis but, instead, may choose to deal with it piecemeal or in progres-

sive stages (*Berkowitz v. Wilson*, 282 App. Div. 875, affd. 307 N. Y. 851; *Matter of Four Maple Drive Realty Corp. v. Abrams*, 2 A D 2d 753, app. dsmd. 2 N Y 2d 837, app. dsmd. 355 U. S. 14; *Szold v. Outlet Embroidery Supply Co.*, 274 N. Y. 271, 280; *West Coast Hotel Co. v. Parrish*, 300 U. S. 379; *People ex rel. Bryant v. Zimmerman*, 241 N. Y. 405, 412, affd. 278 U. S. 63).

It is well settled that an enactment is entitled to a presumption of constitutionality (*Wasmuth v. Allen*, 14 N Y 2d 391, 397-398, app. dsmd. 379 U. S. 11, *supra;* 16 C. J. S., Constitutional Law, § 99, p. 403 *et seq.*); and that it will not be deemed violative of the equal protection provision of the Constitution where the classification by the Legislature rests upon a reasonable basis — where it is not so void of rationality as to be the expression of a whim rather than an exercise of judgment (*Borden's Co. v. Ten Eyck,* 297 U. S. 251, 263; *Safeway Stores v. Oklahoma Grocers,* 360 U. S. 334; *Bucho Holding Co. v. Temporary State Housing Rent Comm.*, 11 N Y 2d 469, 477). The statute in question clearly meets this test. As shown above, the Legislature at this time chose the simplest means of taking a census or roll call of attorneys presently admitted to practice. The time classification made by the statute is appropriate to that purpose. Therefore, the distinction between present and future attorneys is such " that legislators could regard it as reasonable and proper without doing violence to common sense " (*People ex rel. Moskowitz v. Jenkins,* 202 N. Y. 53, 60, *supra*).

Classifications similar to that provided by the cutoff date of the instant statute have been repeatedly upheld. Thus, in *Matter of Stracquadanio v. Department of Health of City of N. Y.* (285 N. Y. 93, 97), the court sustained a regulation of the New York City Board of Health which permitted milk distributors to obtain a permit to deliver milk only if they had been a " *bona fide* independent milk distributor in this city prior to June 1, 1939." The court there held the regulation must be upheld so long as the classification involved "has a reasonable basis within the knowledge and experience of the official body by which it was promulgated," adding that it was " needless to labor the point, long settled, that we may declare such a regulation invalid only in the event that it is so lacking in reason for its promulgation that it is essentially arbitrary." (See, also, *Matter of Pattison v. Murphy,* 28 Misc 2d 664 —— upholding statute taxing differently the estates of those dying before and those dying after January 1, 1959; *People ex rel. Bryant v. Zimmerman,* 241 N. Y. 405, affd. 278 U. S. 63, 66 — upholding statute requiring filing of constitutions of associations of " 20 or more persons &ast; &ast; &ast; requir[ing] an oath as a prerequisite &ast; &ast; &ast; of member-

ship ''; *Matter of London* v. *Wagner*, 22 Misc 2d 360, affd. 13 A D 2d 479, affd. 11 N Y 2d 762 — upholding statute allowing tax abatement only to building owners who made certain alterations prior to July 1, 1958.)

Neither the plaintiff nor the Special Term appears to have any objection to the particular cutoff date selected, but rather to the idea of any date in general. But, as we have indicated, the fixation of a date here was within the discretion of the Legislature, and such time classification was not unreasonable.

The Special Term, in applying the equal protection clause to invalidate the statute here, relied upon *People ex rel. Moskowitz* v. *Jenkins* (202 N. Y. 53, 59–60, *supra*). In that case the court stated: ''It is undoubtedly true that the legislature may impose on professions, callings, businesses and vocations license fees for the purpose of revenue, and though termed license fees, they are enacted not under the police power, but under the power of taxation. There exists also in the legislature the right to classify vocations or businesses for the purpose of taxation. One class may be taxed at one rate and another class at another rate. But the right to classify, though very broad, is not absolutely unlimited. In *People ex rel. Farrington* v. *Mensching* (187 N. Y. 8) we held that a law imposing a tax upon the sale and transfer of shares of stock at a specific rate per share instead of upon its real or nominal value was not a justifiable classification. Judge VANN, in writing for this court, and referring to the United States Supreme Court, said: ' By this we do not understand that great court to mean that the relation must necessarily be '' reasonable and proper '' according to the judgment of reviewing judges, but that the court must be able to see that legislators could regard it as reasonable and proper without doing violence to common sense. In other words, there must be enough reason for it to support an argument, even if the reason is unsound ' (p. 22). We held the same doctrine in *Matter of City of New York* (190 N. Y. 350). Treating the statute and the ordinance passed under it as an exercise of the taxing power (though I have no idea it ever was intended as such), the classification is plainly arbitrary and unreasonable. Transient retailers might be subjected to a reasonable tax, but why a retailer who said his goods were bankrupt or damaged stock should be taxed $100 in a month, and a transient dealer who refrained from such statement should be taxed nothing, I am at a loss to imagine on any theory of taxation, though as a statute to prevent competition, the reason for the distinction is apparent.''

As appears, neither *Moskowitz* nor *Farrington* (*supra*) (the latter was expressly overruled in *Vaughan* v. *State of New York*,

272 N. Y. 102, 107) deals with a cutoff date at all, so that their only relevancy here is with respect to the general principles they enunciate which, as we have seen, favor the subject legislation. The same is true of the third case, *Morey* v. *Doud* (354 U. S. 457), cited by Special Term on this point. In *Morey* the challenged statute singled out from all competitors one corporation for different (and monopolistic) treatment. Other cases are cited by plaintiff respecting the above-mentioned general principles, about which there is no dispute.

The cases cited by the *amicus* which annulled statutes as violative of equal protection dealt with enactments plainly discriminatory and devoid of justification. Thus: *Gulf, Colorado & Sante Fé Ry.* v. *Ellis* (165 U. S. 150) voided a statute allowing counsel fees only in actions involving livestock struck by trains. This case was distinguished in *Atchison, Topeka & Santa Fé R. R. Co.* v. *Matthews* (174 U. S. 96, 106) which *sustained* a statute allowing counsel fees to plaintiffs in actions against railroads for damage caused by sparks from locomotives. In *Atchison* the court pointed out that: " [T]he very idea of classification is that of inequality, so that it goes without saying that the fact of inequality in no manner determines the matter of constitutionality." *Oyama* v. *California* (332 U. S. 633) held invalid the alien land law which discriminated against Orientals. *People* v. *Gidaly* (35 Cal. App. 2d 758) involved a statute prohibiting picketing by persons employed less than 30 days or against businesses where less than half the employees were on strike. *Yick Wo* v. *Hopkins* (118 U. S. 356) voided a law giving local officials unlimited discretion in licensing laundries, where the proof showed a pattern of racial discrimination. In *Lang's Bakery* v. *City of Lockport* (251 App. Div. 791) the court enjoined the enforcement of an ordinance which sought to impose a higher license fee upon outside peddlers than upon local peddlers. In *Matter of Wormsen* v. *Moss* (177 Misc. 19) the court struck down an ordinance which required masseurs to be citizens for two years before they could apply for licenses. All of these cases, cited by the *amicus,* involved statutes that were patently discriminatory and without justification, and none is in any way comparable to the case at bar.

Accordingly, it is clear that the time classification made by the statute herein (Judiciary Law, § 467-a) is not unreasonable or arbitrary, and therefore does not effect a denial of equal protection or of due process.

Plaintiff contends that the statute (Judiciary Law, § 467-a) is invalid because its title " does not describe the enactment contained therein ", in violation of the State Constitution (art. III,

§ 22). That provision reads: "Every law which imposes, continues or revives a tax shall distinctly state the tax and the object to which it is to be applied ". It has been held repeatedly that this provision refers only to general taxes levied for the general purposes of the State, and not to taxes in the nature of license fees (*People* v. *Fire Assn. of Philadelphia,* 92 N. Y. 311, 327-328, affd. 119 U. S. 110; *Trustees of Exempt Firemen's Benevolent Fund* v. *Roome,* 93 N. Y. 313, 329).

Plaintiff's further contention that the statute diminishes the compensation of all the Judges (who are attorneys at law) in violation of the State Constitution (art. VI, § 25) was rejected by the Special Term (p. 437) on the ground that " the statute does not purport to do anything to their salaries as Judges, but treats with them in their capacities as attorneys ". As stated by the Special Term Justice (p. 437): " One might as well say that if a Judge needs a car to get to work, his car license fee could not be changed while he was in office." The payment of income tax annually in much larger amounts by Judges has been held not to violate this provision of the State Constitution (*Black* v. *Graves,* 257 App. Div. 176, affd. 281 N. Y. 792; cf. *O'Malley* v. *Woodrough,* 307 U. S. 277). In any event, such a contention may only be advanced by the one personally aggrieved (*Matter of Blaikie* v. *State Harness Racing Comm.,* 11 A D 2d 196, 200; *Dorsey* v. *Stuyvesant Town Corp.,* 299 N. Y. 512, 521).

Accordingly, the judgment and order should be reversed on the law, without costs; defendant's motion to dismiss the amended complaint should be granted; and the amended complaint should be dismissed, without costs. The cross appeal by the plaintiff should be dismissed as academic, without costs.

CHRIST, Acting P. J., RABIN, HOPKINS and BENJAMIN, JJ., concur.

On defendant's appeal: Judgment and order reversed on the law, without costs; defendant's motion to dismiss the amended complaint granted; and amended complaint dismissed, without costs. No questions of fact were considered.

Cross appeal by plaintiff dismissed as academic, without costs.