Shanley N. Egeth, J.
In Walker v. Sheldon (10 N Y 2d 401), the Court of Appeals established the rule of law, now well accepted in New York, that punitive damages may be assessed as a deterrent to fraudulent consumer sales. It extended the availability of punitive damages from cases of wanton and malicious fraud directed at a specific individual (Toomey v. Farley, 2 N Y 2d 71) to cases of consumer fraud where those damages ‘ ‘ are more likely to serve their desired purpose of deterring similar conduct * * * in any other area of tort.” (Walker v. Sheldon, supra, p. 406.)
*300 After extended litigation in this court, Judge Bunn G. Goodman awarded punitive damages to the individual defendants herein on their counterclaim, in addition to actual damages, on the grounds that “plaintiff’s conduct was a gross fraud upon the general public involving high moral culpability
This case was referred to me to assess the amount of punitive or exemplary damages to be awarded to the defendants, Mr. and Mrs. Dazell Ingram.
In this ease, the record discloses that plaintiff finance company under assorted names, guises and postures, has been responsible for creating and implementing a broad consumer fraud scheme, victimizing thousands of residents of ghetto areas, over a period of many years. Plaintiff devised a refrigerator food plan sales scheme, permeated with fraudulent representations, grossly unconscionable profit, and a divestiture of meaningful legal redress to its customers by diversion of most of the consumers’ payments to itself, to thereby render its puppet seller financially incapable of satisfying victimized purchasers.
The record discloses that this plaintiff and its principals have been engaged in this type of fraud for many years (see Frostifresh Corp. v. Reynoso, 52 Misc 2d 26, 27, revd. on other grounds 54 Misc 2d 119; Jones v. Star Credit Corp., 59 Misc 2d 189; Star Credit Corp. v. Ingram, 71 Misc 2d 787; Star Credit Corp. v. Molina, 59 Misc 2d 290; Star Credit Corp. v. Gonzalez, N. Y. L. J., Sept. 28, 1965, p. 15, col. 7); that the nominal seller and plaintiff shared common office space; that customers were subjected to high pressure sales predicated upon false statements, compelled to pay five to 10 times the legitimate cost of freezers, and many times the cost of food for an economical food plan which did not exist; that thousands of purchasers were victimized; that plaintiff continued its operation after its corporate predecessors and principals were the subject of an intensive investigation by the Attorney-General of the State of New York, which resulted in a broad consent injunction against the predecessor corporation and its principals in an attempt to end the fraudulent scheme; that thousands of sales were thereafter made to new victims including this defendant; that plaintiff continued plying its fraudulent scheme in disregard of the injunction, being willing when compelled under rare circumstance to return money to persistent isolated victims of its malicious, wanton, willful and gross fraud upon the general public.
In the instant case, it is clear that all prior legal action against this plaintiff, and its predecessors, has been ineffective *301 to halt this widespread fraudulent scheme. “ In the calculation of [its] expected profits, the [plaintiff] wrongdoer is likely to allow for a certain amount of money which will have to be returned to those victims who object too vigorously * * * perfectly content to bear the additional cost of litigation as the price for continuing his illicit business. It ¡stands to reason that the chances of deterring him are materially increased by subjecting him to the payment of punitive damages.” (Walker v. Sheldon, 10 N Y 2d 401, 406, supra.)
There is, however, no rigid mathematical formula for determining the amount of punitive damages that should be awarded. (I. H. P. Corp. v. 210 Central Park South Corp., 16 A D 2d 461, affd. 12 N Y 2d 329; Toomey v. Farley, 2 N Y 2d 71, 83, supra; Faulk v. Aware, Inc., 35 Misc 2d 302, revd. on other grounds unless plaintiff consented to remittitur 19 A D 2d 464, affd. 14 N Y 2d 899 and 14 N Y 2d 954; 9 Encyclopedia, New York Law — Damages, § 67.) Consequently, “ the question of the amount of * * * punitive damages to be awarded [is] a matter for the [trier of fact].” (Toomey v. Farley, 2 N Y 2d 71, 83, supra, citing Reynolds v. Pegler, 123 F. Supp. 36, 38, affd. 223 F. 2d 429, cert. den. 350 U. S. 846.)
Some courts have found a way to limit discretion in awards of punitive damages by requiring some ‘ ‘ reasonable relationship ” between actual and exemplary damages. (Cf. Leombruno v. Julian, 37 N. Y. S. 2d 618, revd. on other grounds 264 App. Div. 981.)
An exhaustive review of the authorities discloses no mandate requiring acceptance of the ‘ ‘ reasonable relationship ’ ’ theory. (See Ray Dodge v. Moore, 251 Ark. 1036; Boise Dodge v. Clark, 92 Idaho 902; Payne Co. v. Jackson, 281 Ala. 426; Underwriters’ Labs. v. Smith, 41 Misc 2d 756; Lewis v. Worldwide Imports, 238 Ore. 580.)
This subject was treated in Note: Exemplary Damages in the Law of Torts (70 Harv. L. Rev. 517, 530): “ Most courts reject the idea that the ‘ reasonable relationship ’ is a fixed mathematical ratio between the two awards. Some define ‘ reasonable relation ’ in a slightly different manner, saying that there must be a proper relationship between the exemplary damages and the type of injury inflicted. However, a test of ‘ reasonable relationship ’ fails to carry out the punitive function of exemplary damages, since it stresses the harm which actually results rather than the social undesirability of the defendant’s behavior. Flexibility of admonition should not be vitiated by adhering to a ‘ reasonable relation ’ test.”
*302 This court also rejects the “ reasonable relationship ” formula in this kind of case. If these damages are to be awarded to protect the public from continuation of a fraudulent consumer scheme, the damages must be taxed in an amount which will accomplish the purpose of providing a deterrent to improper behavior.
In this case defendants’ counterclaim demands $15,000 for punitive damages. This court is restricted to that demand, and accordingly the exemplary damages are hereby assessed at $15,000. This court would have been willing to assess a greater sum in damage to provide a greater deterrent to the continuation by this plaintiff of its fraudulent scheme.
This court would be remiss if it did not acknowledge its gratitude and appreciation to John J. Witmeyer, III, and his employer Mudge Rose Guthrie & Alexander for their heroic efforts pro bono publico in this case. Without their dedication and proficient legal assistance these defendants might remain remedyless victims of this consumer fraud, and the public interest would not have been advanced in this instance.