OPINION OF THE COURT
Myriam J. Altman, J.
When Harold Hoffman, a young attorney, called the number listed in a New York Times apartment ad, he was unaware that he had dialed a brief nightmare in which he would be defrauded of $100 and assaulted. To redress the wrong, he has instituted two small claims actions, one for fraud and breach of contract and the other for assault and battery and negligence. The fraud action is against Albert Ryan, doing business as Total Apartments, Albert Ryan individually, and Nancy Lesser, Ryan’s employee. The assault action is against Albert Ryan, doing business as Total Apartments, and Albert Ryan individually. Total Apartments (Total) is an apartment referral agency, licensed to operate by the New York Department of State.
The events giving rise to both suits occurred on April 27, 1979, when claimant responded to an advertisement in that day’s New York Times for the lease of a three-room (or one-bedroom) apartment in a brownstone building. Mr. Hoffman called the telephone number listed in the newspaper and was asked by the answering party to leave his number, which he did. Defendant Lesser returned the call. She explained to claimant that he would have to pay $100 in order to utilize the referral service. Mr. Hoffman replied that he only wanted to see the advertised apartment but would nevertheless pay the fee. He then asked if the apartment was still available; Ms. Lesser answered that it was.
Following this conversation, claimant went to the offices of *848 Total Apartments, where he and Ms. Lesser continued their negotiations. Mr. Hoffman was asked to pay the $100 fee and sign a contract. The claimant insisted upon an additional description of the premises before he paid the fee. Defendant Lesser’s description, based upon her personal observations, was in accordance with the advertisement.
Once the paperwork was completed and Mr. Hoffman had paid his money, he went to look at the apartment. It was a studio and was not located in a brownstone building.
Despite testimony to the contrary, I also find as follows. Claimant returned to Total Apartments after seeing the apartment and explained the discrepancy between the advertisement and the actual premises to Ms. Lesser. She responded that, as an office policy, fees were not refunded. Ms. Lesser also refused claimant’s suggestion that she refund his fee after subtracting an amount appropriate to compensate her for her assistance.
As the conversation between Mr. Hoffman and Ms. Lesser ended, claimant turned to leave and noticed a prospective client speaking with Michael Starrett, another employee of Ryan. Mr. Hoffman told the other client that he had just been "cheated”, whereupon Mr. Starrett threatened to "break [claimant’s] f-— neck.” Mr. Starrett then grabbed claimant, "bounced” him off a wall, and "threw” him out of the office. Mr. Ryan was not present when any of the foregoing events occurred. Mr. Hoffman testified that his back and shoulder hurt for a week following this incident.
Claimant’s first action seeks to recover for breach of contract and fraud. Inasmuch as Total Apartments represented to Mr. Hoffman that for $100 he could see an apartment with specific characteristics and claimant paid the fee, the referral to an apartment which was not as described amounts to breach of contract (see Briefstein v Rotondo Constr. Co., 8 AD2d 349).
Claimant has also made out his claim of fraud. For fraud to exist: "There must be a representation of fact, which is either untrue and known to be untrue or recklessly made, and which is offered to deceive the other party and to induce them to act upon it, causing injury” (Jo Ann Homes at Bellmore v Dworetz, 25 NY2d 112, 119).
Ms. Lesser’s incorrect description of the apartment, supposedly based upon personal knowledge, was consciously made. Furthermore, Ms. Lesser knew that claimant was only inter *849 ested in that particular apartment and that, if the apartment was not available or was not as described, he would not have done business with Total Apartments. Mr. Hoffman consequently paid $100 to see an apartment which obviously did not suit his needs.
Apartment referral agencies are regulated by the New York State Department of State, which derives its authority from article 12-C of the Real Property Law. The Secretary of State has promulgated eight regulations (19 NYCRR 190.1 et seq.) pursuant to such authority (see Real Property Law, § 446-i) and I find that, in addition to having breached their contract and having committed fraud, defendants violated six of those eight regulations. Those violations began with the very newspaper advertisement which set in motion the events in question.
Section 190.8 (a) of title 19 of the Official Compilation of Codes, Rules and Regulations of the State of New York requires that "[a]ll advertisements placed by an apartment referral agent * * * indicate that the advertiser is an apartment referral agent or give the name of the apartment referral agent and his telephone number.” The advertisement which claimant answered, however, merely read, "80’s (Park) Quiet Brnstn 3 $379 NR TRANS 744-5732.”
A contract between an apartment referral agent and a client must contain, among other things (19 NYCRR 190.2):
"(c) The list of apartments to which the prospective tenant is being referred, which shall include as to each apartment listed:
"(1) The address of the apartment.
"(2) Number of rooms.
"(3) Monthly rental.
"(4) Utilities included in rental.
"(5) Floor location.
"(6) Availability of elevator service.
"(7) Date the apartment is available for occupancy.”
On the back of the parties’ contract is hand written "show w/ keys, 126 E. 83 Street, Imm Occ, Apt 2B, 1 Bd, $379 w/ui.” This description, in addition to not stating whether elevator service was available, states that the apartment was a one bedroom apartment when in fact it was a studio.
 Defendant also violated 19 NYCRR 190.1 which di *850 rects, in pertinent part, that the agent shall not collect its fee until the client is advised whether the advertised apartment is available. The three-room, or one-bedroom, apartment in a brownstone building either did. not exist or was not made available to claimant. Therefore, a representation that such premises were available was false. For the same reason, this behavior violates the spirit of 19 NYCRR 190.5, which requires that the service confirm daily with the appropriate landlord that each apartment is still on the market.
A third violation arises from the incorrect description. Section 190.6 of title 19 of the Official Compilation of Codes, Rules and Regulations of the State of New York provides that "[n]o apartment referral agent or employee thereof shall refer a respective tenant to an apartment unless * * * the apartment meets the specifications of said tenant as set forth in the contract or receipt.”
Although he has not done so, Mr. Ryan could not argue that the Total Apartments employees were disobeying his instructions. Under 19 NYCRR 190.7, the apartment referral agent must supervise the "employees to insure their compliance with all requirements of the provisions relating to apartment referral agents in article 12-C of the Real Property Law and this Part.” Thus defendant Ryan is responsible for his employees’ violations of article 12-C and the regulations, breach of contract, and fraud.
The question of the extent to which Mr. Hoffman may recover in this first action remains. Claimant is clearly entitled to the return of his $100 fee, but he also seeks $900 as punitive damages. Normally, punitive damages are not recoverable for breach of contract (Garrity v Lyle Stuart, Inc., 40 NY2d 354). However, they may be assessed to deter consumer fraud (Walker v Sheldon, 10 NY2d 401; Joyner v Albert Merrill School, 97 Misc 2d 568; Star Credit Corp. v Ingram, 75 Misc 2d 299). The Legislature has gone one step further. Where a referral service has violated any provisions of article 12-C and has received a sum of money as a result of that violation, the client may recover, in any court of competent jurisdiction, a penalty of one to four times the fee charged (Real Property Law, § 446-h, subd 3). The violations for which a client may recover need not constitute common-law fraud. For instance, an individual who contracts with a service displaying an expired license in violation of subdivision 1 of section 446-d of the Real Property Law might receive bona *851 fide apartment referrals from the agent, but that party nevertheless could recover at least the service fee in an action brought under subdivision 3 of section 446-h of the Real Property Law.
Whether this provision was intended to limit punitive damages where common-law fraud has also been established is unclear. Such a limitation in consumer fraud cases would be unfortunate. "[I]f punitive damages are to be awarded to protect the public from continuation of a fraudulent consumer scheme, they must be taxed in an amount which will accomplish that purpose” (Joyner v Albert Merrill School, supra, p 577). Nevertheless, the penalty range of subdivision 3 of section 446-h of the Real Property Law is a useful guideline in this particular instance. Claimant is therefore awarded $100 in compensatory damages and $400 in punitive damages against Total Apartments and Albert Ryan. The action against Nancy Lesser is dismissed inasmuch as she was acting in her capacity as an employee.
In claimant’s second small claims action, he seeks to recover for his pain and suffering allegedly caused when Michael Starrett attacked him. Despite testimony to the contrary, I find that without any attempt to persuade Mr. Hoffman to voluntarily leave the Total Apartments office, Mr. Starrett said, "I’m going to break your f-— neck.” Mr. Starrett then grabbed claimant, "bounced” him off a wall, and "threw” him out the office door. Claimant testified that, as a result of this treatment, his back and shoulder hurt for one week.
Generally, "[a] master (principal or employer) is responsible for the tort of his servant (agent or employee) when the servant commits the tort within the scope of his employment” (McLaughlin, NYLJ, New York Trial Practice, July 13, 1979, p 1, col 1). Aside from the fact that defendant Ryan has not denied responsibility for his employee’s actions, a recent Court of Appeals decision requires a finding of liability on the part of Mr. Ryan. "[T]he test has come to be 'whether the act was done while the servant was doing his master’s work, no matter how irregularly, or with what disregard of instructions’ ” (Riviello v Waldron, 47 NY2d 297, 302). Useful guidelines to be considered are (p 303): "the connection between the time, place and occasion for the act; the history of the relationship between the employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure *852 from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated”.
The incident upon which claimant’s action is based occurred between a client and an employee in the Total Apartments office during business hours. The Total Apartments employees apparently operate the business with limited supervision by Mr. Ryan. The particular employee involved, Michael Starrett, had been hired by Albert Ryan because Mr. Ryan valued his judgment.
The third and fourth guidelines of Riviello must be applied in such a way as to give full weight to the regulation that every apartment referral agent supervise his employees to insure compliance with article 12-C of the Real Property Law and its derivative regulations (see 19 NYCRR 190.7). Because defendant Ryan is responsible for compliance, he is necessarily responsible for noncompliance and would be estopped from arguing that the act was not one commonly performed by Mr. Starrett or that the conduct departed from normal practice.
For the same reasons, "the specific act was one that the employer could reasonably have anticipated.” Given the limited New York City apartment market, Total Apartments’ less than honorable business practices could only result in friction between its employees and clients. Finally, the fact that the tort was intentional is of no consequence (Riviello v Waldron, supra, p 304). Based upon the foregoing, Albert Ryan is necessarily liable for the assault and battery by his employee, Michael Starrett.
With respect to claimant’s damages in this second action, Mr. Hoffman testified that his back and shoulder hurt for one week. Such medical testimony by a lay witness is admissible where a brief period of time is involved (Meagher v International Ry. Co., 271 App Div 945), but here it is of limited value. Claimant gave no indication that his pain incapacitated him in any substantial way. Consequently, the award for pain and suffering must be nominal. Mr. Hoffman is awarded $100 in the second action.