OPINION OF THE COURT
Margaret Taylor, J.
On July 7, 1974, plaintiff pro se and her mother purchased a sofa and two chairs from defendant Roma Furniture Co., using their respective Master Charge cards as the method of payment. The purchases were acknowledged by two sales orders each bearing the purchaser’s name, address and telephone number, as well as a description of the articles purchased. In addition to the above information, there appeared the notation “Mastercharge — paid in full” and an estimated delivery date of October, 1974.
Six years and $2,023 later, plaintiff has still not received her sofa and chairs. Plaintiff now brings an action for breach of contract and asks to be restored to her precontract status.
The court finds after trial that plaintiff has proven by a preponderance of the credible evidence the following material facts:
On Saturday, August 23, 1974, plaintiff brought to defendant Roma Furniture Co. several swatches of material to be used to custom upholster the sofa she had ordered. Late that night plaintiffs mother was hospitalized. Fearing that the bills she had incurred would overwhelm her without her mother’s continued income, plaintiff called *187 Roma the following Monday to try to cancel the special order. She was informed that it was too late to cancel. On September 7,1974, plaintiff’s mother died. Plaintiff nevertheless made the September and October payments on her Master Charge account and on her mother’s Master Charge account.
In late October plaintiff received some unanticipated money, enough to cover the furniture cost. She therefore telephoned defendant several times and requested that her furniture be delivered. On each occasion, plaintiff was told by defendant’s employees that the furniture would not be delivered until plaintiff’s Master Charge account had been paid in full.
In view of the fact that defendant received full payment for these purchases from Master Charge two weeks after the purchase date, it is difficult to fathom why delivery should have been conditioned on plaintiff’s settling her accounts with Master Charge. Nevertheless, plaintiff did produce canceled checks to prove full payment of her indebtedness to Master Charge, thus leaving the furniture delivery as the only unperformed obligation in this transaction. Defendant produced three speed letters of questionable authenticity dated September and October, 1974 purportedly offering to deliver the furniture. The freshness of these documents belies their alleged age, and plaintiff adamantly denies their receipt.
Plaintiff testified that she renewed her efforts to have her furniture delivered in 1977 when she moved to another residence. Faring no better on this occasion than she had fared originally, plaintiff bought a replacement sofa and two chairs at that time. Defendant testified that the furniture that plaintiff bought at Roma did find a suitable home, however, as it was sold without notice to plaintiff, upon the closing of the defendant’s warehouse in 1977, for approximately $400.[1]
*188 Plaintiff has proven by a preponderance of the credible evidence that defendant’s failure to deliver constitutes a breach of the parties’ contract. If the common law were not adequate recourse in this instance, Consumer Protection Law regulation 17 establishes the precise standard of conduct to which defendant will be held.
“§ 17.3(a) The seller must deliver the furniture no later than the last date disclosed on the contract unless the customer is notified in writing or by verbal communication supplemented within one day by a writing, of the delay and the anticipated delivery date or range of delivery dates.
“(b) If the seller has not delivered within 30 days of the originally promised date, the seller must, at the option of the customer:
“(i) cancel the contract with full refund
“(ii) cancel the contract and give the customer a credit
“(iii) negotiate a new delivery date with the customer
“(iv) allow the customer to make a new selection of furniture.
“(c) The customer shall be notified in writing of these options prior to the expiration of this 30 day period.”
By a preponderance of the credible evidence adduced at trial the court finds that not only had defendant not complied with the amenities required by the Consumer Protection Law regulations, but defendant never performed its half of the contract in any manner whatsoever.
Clearly, claimant is entitled to recover the $2,023 purchase price which was paid to defendant in July, 1974. Had claimant sought punitive damages in addition to her actual damages, these might have been recoverable, as well.[2] Although punitive damages are not generally recoverable for breach of contract (Garrity v Lyle Stuart, Inc., 40 NY2d 354), they have oftentimes been awarded in cases of con *189 sumer fraud (Walker v Sheldon, 10 NY2d 401; Hoffman v Ryan, 101 Misc 2d 845; Star Credit Corp. v Ingram, 75 Misc 2d 299).
Judgment for plaintiff against defendant for $2,023 with interest from February 1, 1975, costs and disbursements.

. An officer of defendant testified that it is quite common for customers who have paid in full for their furniture to neglect to pick it up or have it delivered. The unidentified owners of the other merchandise sold at these warehouse sales, who were presumably injured by the same pattern of defendant’s conduct as was proven in this case, could have appropriately sought relief in this lawsuit had this suit been brought as a class action. (King v Club Med, 76 AD2d 123; Vickers v Home Fed. Sav. & Loan Assn, of East Rochester, 87 Misc 2d 880; NY Legis Ann, 1975, p 426.)

. The failure of this pro se plaintiff — due to legal naiveté — to assert a timely claim for punitive damages highlights the inequities of our “justice” system that fails and refuses to provide civil litigants with affordable legal advice. (See Matter of Smiley, 36 NY2d 433.) This policy lamentably denies any real possibility of being made whole to those claimants who can least absorb the wrong perpetrated upon them and to those whose claims are for sums too small to warrant an attorney undertaking the case. This is another benefit that would inure upon the maintenance of a class action for this type of matter. (See n 1, supra; Eisen v Carlisle & Jacquelin, 391 F2d 555.)