OPINION OF THE COURT
Frank R. Bayger, J.
This is an action for declaratory and injunctive relief invalidating, on constitutional grounds, recently enacted amendments to article 12-C of the Real Property Law, specifically, subdivisions 3 and 4 of section 446-b, and section 446-c (subd 5, pars [a], [b]) (L 1980, ch 805, § 1, eff Nov. 1, 1980); and certain regulations of the Secretary of State, specifically, 19 NYCRR 190.1, 190.2, 190.5, 190.6 and 190.8, relating to the licensing and regulation of “apartment information vendors” (Real Property Law, § 446-a, subd 2). The plaintiff also seeks a preliminary injunction enjoining the State’s enforcement of those provisions pending final determination of the issues thus raised herein (CPLR 6301). The plaintiff corporation is engaged in the business of providing relevant information concerning the location, cost and availability of rental housing to prospective tenants in exchange for an agreed upon fee *238 which is customarily paid in advance and without regard to whether the customer thereafter leases or rents any of the suggested properties. Formerly referred to as “apartment referral agents” (L 1975, ch 772, § 1), such businesses are now defined to be “apartment information vendors” (Real Property Law, § 446-a, subd 2, as amd by L 1980, ch 805, § 1). Plaintiff has been continuously licensed as an apartment referral agent pursuant to the former statute since 1976, and now operates offices in or about the cities of Buffalo, Niagara Falls, Rochester, Syracuse and Albany.
Legislation designed to curb various abuses then prevalent in the apartment referral industry was first enacted in 1975 (L 1975, ch 772, § 1). Those statutes and associated administrative regulations proved to be ineffective, however, and continuing consumer complaints, particularly in the metropolitan New York City area, eventually brought about the enactments sought to be invalidated herein (see, e.g., Hoffman v Ryan, 101 Misc 2d 845; Rent Finders v Department of State, Supreme Ct, Nassau County, July, 1980; and cf. New York Dept of State, Staff Reports, Apartment Referral Agents, Nov. 29, 1979 and Jan. 25, 1980). The most common complaints concerned referrals to nonexistent, or unavailable, or inappropriate, or uninhabitable apartments; the use of misleading, or “bait and switch” advertising of specific, particularly desirable apartments; a general misconception of the nature of apartment referral services; frequent denials of promised refunds; and the practical impossibility and inefficiency of after the fact enforcement of the existing regulatory scheme by the Department of State and/or local law enforcement authorities (id.). In an effort to meet those objections, the Legislature enacted more stringent, annual licensing requirements (cf. Real Property Law, § 446-b) and prescribed mandatory refunds of all but $15 of a customer’s advance fee in the event he is unable to secure acceptable housing through the information provided by the vendor (cf. Real Property Law, § 446-c, subd 5, pars [a], [b]). The challenged regulations relate to the form and content of apartment information contracts (19 NYCRR 190.1, 190.2); prohibit customer referrals to any apartment except upon the vendor’s specific verification of the apartment’s continuing availability as of the date of the parties’ *239 contract (19 NYCRR 190.5); prohibit referrals to apartments for which the vendor does not possess the owner’s or agent’s written authorization to do so (19 NYCRR 190.6); and totally prohibit a vendor’s advertising of specific apartments (19 NYCRR 190.8). Plaintiff’s objection to 19 NYCRR 190.1’s prohibition of apartment information contracts containing fewer than three suitable listings has been rendered moot by the repeal of that requirement subsequent to argument of this motion (NY State Register, vol 2, issue 39, p 20).
Plaintiff contends that the contested statutes and regulations are unconstitutional on their face and represent a direct and immediate violation of the free speech, due process, equal protection and freedom of contract provisions of the State and Federal Constitutions as applied to the plaintiff’s business. Plaintiff claims to have already suffered irreparable injury in the nature of a 50% loss of business since the inception of the present regulatory scheme and strenuously argues that in the absence of a preliminary injunction, it will suffer absolutely ruinous financial losses prior to a final determination of this action. Unfortunately, that possibility is not determinative of the present motion (Turner Nurses Agency v State of New York, 17 Misc 2d 273).
Motions for a preliminary injunction are addressed to a court’s discretion (City of Buffalo v Mangan, 49 AD2d 697). It is a drastic remedy which courts are reluctant to grant, particularly where, as in this case, a preliminary injunction would have the same effect as the granting of the permanent relief requested (City of Buffalo v Mangan, supra; and see Matter of Armitage v Carey, 49 AD2d 496). It is granted sparingly and only when the moving party has clearly established: (1) the likelihood of his ultimate success on the merits, (2) an urgent necessity to prevent immediate and irreparable injury, and (3) a balancing of the equities in favor of the granting of such relief (Town of Porter v Chem-Trol Pollution Servs., 60 AD2d 987; Tucker v Toia, 54 AD2d 322; Camardo v Board of Educ., 50 AD2d 1073; Matter of Armitage v Carey, supra). “One seeking a preliminary injunction has the heavy burden of showing that he has a clear right to ultimate victory on the merits, *240 and that he will suffer immediate and irreparable harm if the preliminary injunction is denied” (Long Is. Oil Terms. Assn. v Commissioner of N.Y. State Dept. of Transp., 70 AD2d 303, 305). And when his request for such relief challenges the constitutionality of presumptively valid and carefully considered legislation, or administrative regulations of a legislative nature, he assumes the heavier burden of establishing unconstitutionality, and his right to injunctive relief, beyond a reasonable doubt (Nettleton Co. v Diamond, 27 NY2d 182, 193, app dsmd sub nom. Reptile Prods. Assn. v Diamond, 401 US 969; Matter of Van Berkel v Power, 16 NY2d 37, 40; Long Is. Oil Terms. Assn. v Commissioner of N. Y. State Dept. of Transp., supra, pp 305-306; Bryant Westchester Realty Corp. v Board of Health of City of N. Y., 91 Misc 2d 56, 57). The plaintiff has failed to meet that burden herein.
The principal thrust of plaintiff’s argument concerns the validity of the State’s prohibition of specific apartment advertising (19 NYCRR 190.8), a prohibition which is alleged to be in direct and immediate violation of plaintiff’s rights under the free speech, due process and equal protection provisions of our State and Federal Constitutions.
The contested regulations were promulgated by the Secretary of State pursuant to legislative authorization (Real Property Law, § 446-i). Like the statutes in issue (Real Property Law, §§ 446-b, 446-c), they enjoy a strong presumption of constitutionality, including a rebuttable presumption of appropriate legislative investigation and necessary factual support (Matter of Van Berkel v Power, supra, p 40; Matter of Triolo v Johnson, 65 Misc 2d 424, affd 40 AD2d 953; Robin v Village of Hempstead, 66 Misc 2d 482). “It is presumed that the law enactment agency has investigated the subject and has acted with reason rather than from mere whim or caprice (Farrington v. Pinckney, 1 N Y 2d 74). Thus, it is a maxim of constitutional law that a Legislature is presumed to have acted within constitutional limits, upon full knowledge of the facts and with the purpose of promoting the interests of the people as a whole” (Turner Nurses Agency v State of New York, 17 Misc 2d 273, 274, supra). To overcome these presumptions as they *241 relate to constitutional due process and equal protection, it was incumbent upon the plaintiff to establish beyond question that the statutes and regulations complained of are without any rational basis whatsoever; that they are totally unreasonable, arbitrary and capricious; and that they are impermissibly discriminatory (Defiance Milk Prods. Co. v Du Mond, 309 NY 537; Grossman v Baumgartner, 17 NY2d 345; Matter of Triolo v Johnson, supra; Turner Nurses Agency v State of New York, supra). There has been no such proof in this case. The mere showing of economic hardship, no matter how threatening or severe, does not warrant a finding of unconstitutionality nor justify the enjoining of presumptively valid legislation (Turner Nurses Agency v State of New York, supra; and see Mariculture Ltd. v Biggane, 48 AD2d 295; Bryant Westchester Realty Corp. v Board of Health of City of N. Y., 91 Misc 2d 56, supra). The State has offered convincing evidence of the need for more effective regulation of the apartment information industry (cf. New York Dept of State, Staff Reports, Apartment Referral Agents, Nov. 29, 1979 and Jan. 25, 1980). Of significant concern was the industry-wide practice of advertising specific apartments of a particularly desirable type, cost or location (see, e.g., Hoffman v Ryan, 101 Misc 2d 845, supra). Since an apartment information vendor generally has no control over the availability or leasing of the advertised apartment and does not otherwise participate in the actual rental process, such advertising was determined to be inherently deceptive and misleading. The plaintiff’s argument herein serves to illustrate the State’s contention in that regard. Although presumably continuing to advertise the existence and nature of its referral services as is permitted by 19 NYCRR 190.8, plaintiff has allegedly received 60% fewer telephone inquiries since its discontinuance of specific apartment advertising. It may reasonably be inferred from that fact that a substantial number of its previous callers were not seeking the referral services actually offered by the plaintiff, but were, in fact, responding to what they assumed to be an owner’s or rental agent’s truthful advertising of available housing — housing which such an advertiser, unlike the apartment information vendor, can accurately *242 describe, show and rent to an interested caller. It is that intentionally fostered deception or misunderstanding which 19 NYCRR 190.8 is reasonably calculated to prevent and which the State is unquestionably entitled to prohibit. 19 NYCRR 190.2, 190.5 and 190.6 bear a similarly direct and reasonable relationship to the demonstrated evils of unverified referrals and referrals to nonexistent, or uninhabitable housing. Due process requires nothing more (Defiance Milk Prods. Co. v Du Mond, 309 NY 537, supra; Nettleton Co. v Diamond, 27 NY2d 182, supra; Grossman v Baumgartner, 17 NY2d 345, supra). Nor may it be said that such regulatory provisions are so discriminatory as to represent a denial of equal protection. Considering the conceptual and fundamental differences in the nature and extent of services offered by apartment information vendors as compared to real estate brokers, apartment owners, or others involved in the rental housing industry, the differences in regulatory treatment accorded the former may not be said to be so “[v]oid of rationality as to be the expression of a whim rather than an exercise of judgment” (Sweeney v Cannon, 23 AD2d 1, 6). So long as the legislative classification is thus founded upon a rational basis and the legislative enactments apply equally to all within the given class, there is no denial of equal protection and the legislative judgment must be upheld (Sweeney v Cannon, supra; and see People v Arlen Serv. Stas., 284 NY 340, 345; 8200 Realty Corp. v Lindsay, 27 NY2d 124; Bucho Holding Co. v Temporary State Housing Rent Comm., 11 NY2d 469).
Plaintiff has similarly failed to establish any violation of its constitutional right of free speech. In this connection it must be remembered that overbreadth analysis does not apply to commercial speech and that 19 NYCRR 190.8 may be invalidated only upon a strong showing of unconstitutionality as it applies to the plaintiff’s activities (Matter of Koffler, 51 NY2d 140, 144; People v Mobil Oil Corp., 48 NY2d 192, 199). Apartment advertising is admittedly a form of commercial speech which, if truthful, may not be constitutionally restrained (Linmark Assoc. v Willingboro, 431 US 85). However, it is the societal interest in the unrestricted flow of truthful and reliable commercial infor *243 mation upon which intelligent and informed consumer decisions can be made, that is the keystone of that constitutional protection (Virginia Pharmacy Bd. v Virginia Consumer Council, 425 US 748; Bates v State Bar of Arizona, 433 US 350; Friedman v Rogers, 440 US 1; People v Mobil Oil Corp., supra). It is the public’s right to know more than the advertiser’s right to speak that is constitutionally guaranteed. Commercial speech thus enjoys a more limited form of constitutional privilege than other types of traditionally protected expression (Ohralik v Ohio State Bar Assn., 436 US 447, 456). It may properly be subjected to “strict requirements for truthfulness” (Bates v State Bar of Arizona, supra, p 383) and if found to be false, deceptive, or misleading, it may be totally prohibited (Friedman v Rogers, supra; Central Hudson Gas v Public Serv. Comm., 447 US 557, 563).
The growing shortage of adequate rental housing, particularly in the State’s urban areas, is a matter of common knowledge. In such a “sellers market” the need for legislation designed to protect the consumer from deceptive, misleading, and frequently false advertising is particularly compelling and in this case, well documented (cf. New York Dept of State, Staff Reports, Apartment Referral Agents, Nov. 29, 1979 and Jan. 25, 1980). A landlord or rental agent advertises housing which he owns or controls and knows to be available. He is motivated by a selfish economic interest to effect its rental. Such factors tend to assure his advertisement’s accuracy and truthfulness and, therefore, its value to the consumer (see Virginia Pharmacy Bd. v Virginia Consumer Council, 425 US 748, 771, supra). Specific apartment advertising by an apartment information vendor on the other hand, is primarily designed not to effect the rental of that apartment, assuming its availability, but to attract prospective purchasers of his information services. His advertising offers far less assurance of reliability or value to the consumer and, as discussed above, is more likely to deceive the public than inform it. Such advertising is therefore without constitutional protection and need not be tolerated by the State in any form (see Friedman v Rogers, 440 US 1, 12, n 11, supra). And where, as in this case, the efficient use of the *244 State’s enforcement resources and the demonstrated potential for fraud and deception require it, such commercial speech may be totally prohibited (Friedman v Rogers, supra, p 15; and see Ohralik v Ohio State Bar Assn., 436 US 447, 464, supra). Our constitutional guarantees of free speech do not diminish the State’s power to regulate or prohibit commercial activity which may reasonably be deemed harmful to the public welfare,-merely because that activity is initiated, evidenced or carried out by some form of speech (Ohralik v Ohio State Bar Assn., supra, p 456). 19 NYCRR 190.8 represents, in my opinion, a valid exercise of that police power (accord Rent Finders v Department of State, Supreme Ct, Nassau County, July, 1980, supra).
It is unnecessary to a determination of this motion to further analyze the plaintiff’s claims with respect to each of the contested provisions. It is sufficient to note that he has failed to meet his burden of proof with respect to the alleged unconstitutionality of the statute’s licensing provisions (Real Property Law, § 446-b, subds 1, 3, 4; see Matter of Chiaino v Lomenzo, 26 AD2d 469), and the mandatory refund provisions of section 446-c (Turner Nurses Agency v State of New York, 17 Misc 2d 273, supra). Like the contested regulations, they are reasonably related and made uniformly applicable to a type of business conduct which the State may constitutionally limit or proscribe. While less drastic, but equally effective measures might have been adopted, it is not the court’s function, especially upon a motion for a preliminary injunction, to question the means chosen by the Legislature or the administrative agency (Grossman v Baumgartner, 17 NY2d 345, supra). The plaintiff’s motion is, therefore, denied.