MURRAY SCHNEIDER, as President of the New York State Federation of School Administrators, AFSA, AFL-CIO and the Council of Administrators and Supervisors, Local 12, NYSFSA, et al., Respondents-Appellants, v GORDON AMBACH, as Commissioner of Education, Appellant-Respondent, and NEW YORK STATE UNITED TEACHERS, Intervenor-Respondent.

Third Department, March 3, 1988

APPEARANCES OF COUNSEL

*James H. Whitney (Richard J. Trautwein* of counsel), for appellant-respondent.

*Robert Saperstein* for respondents-appellants.

*James R. Sandner* for intervenor-respondent.

*Norman H. Gross (Henry F. Sobota* of counsel), for New York State School Boards Association, *amicus curiae.*

**OPINION OF THE COURT**

LEVINE, J.

In 1986, the Legislature appropriated funds and enacted legislation to supplement the salaries of teachers employed by local school districts and boards of cooperative educational services (hereinafter BOCES), termed "the excellence in teaching apportionment" (hereinafter EIT) (Education Law § 1950 [15]; § 3602 [27], as added by L 1986, ch 53, §§ 20, 49). Under the statutory scheme, local school districts and BOCES can apply for and receive EIT funds according to specified aid ratios. A portion of the funds received are to be "set aside" specifically to increase the salaries of first, second and third-year teachers whose salaries fall below certain median salary figures, and the balance is to be used "to improve salaries for teachers * * * in general" (Education Law § 1950 [15] [a]; § 3602 [27] [a]). The Legislature also directed that in districts where the teachers are represented by "certified or recognized employee organizations", the actual salary increases thus funded "shall be determined by separate * * * negotiations" *(ibid.).*

The EIT provisions also direct defendant, the Commissioner of Education, to adopt regulations to implement the EIT program, subject to the approval of the State Director of the Budget (Education Law § 1950 [15] [f]; § 3602 [27] [f]). Pursuant to that authority, regulations were promulgated in June 1986, upon notice of emergency rule making, without public hearings, and were made permanent by notice of adoption the following August. The regulations (8 NYCRR 175.35) provide three definitions of "teachers" for purposes of eligibility for EIT salary supplements: (1) full-time classroom instructors in kindergarten through 12th grade (8 NYCRR 175.35 [a] [2]), (2) employees in the same bargaining unit as full-time classroom teachers (8 NYCRR 175.35 [e] [1] [i]), and (3) employees not represented by a bargaining unit but designated as kindergar-

ten through 12th grade teachers by a Board of Education or BOCES (8 NYCRR 175.35 [e] [1] [ii]).

Plaintiffs are and/or represent organizations of school supervisors, administrators, counselors and other educational professionals at the local school district or State levels who are not engaged in full-time classroom teaching and do not belong to teachers' bargaining units. They commenced this action challenging 8 NYCRR 175.35 on statutory and constitutional grounds. The complaint alleges in pertinent part that defendant lacks statutory authority to adopt a regulation in which all school supervisory personnel are not eligible to receive EIT salary supplements and, in any event, that the regulations violate the Equal Protection and Due Process Clauses of the State and Federal Constitutions in discriminating as to eligibility of supervisory staff on the basis of membership in teachers' bargaining units. After defendant answered the complaint, the parties cross-moved for summary judgment. Supreme Court rejected each of plaintiffs' statutory objections and, accordingly, dismissed the causes of action based thereon. The court, however, found merit in plaintiffs' equal protection challenge to subdivision (e) (1) (i) of the regulations, which extends the right to receive EIT salary increases to non-full-time teaching classroom teachers but limits eligibility only to those who are "included within the teachers organization bargaining unit(s) for purposes of collective bargaining". Supreme Court, therefore, granted plaintiffs summary judgment to the extent of declaring 8 NYCRR 175.35 (e) (1) (i) invalid. These cross appeals ensued.

Addressing at the outset plaintiffs' cross appeal, we agree with Supreme Court's conclusion that defendant was not compelled by statute to extend EIT eligibility to all professional supervisory staff members of each school district and BOCES. Plaintiffs' contention is primarily based on the facts that the term "teachers" is not defined in Education Law § 1950 (15) and § 3602 (27), and the EIT program created by those sections deals with supplements to teachers' salaries. Therefore, plaintiffs argue, it must have been intended that the definition of "teachers" in the salary article of the Education Law (Education Law art 63; *see,* Education Law § 3101 [1]), which includes the "supervisory staff of each school district", should apply. We find no such unambiguous expression of that intent.

Application of the definitions contained in Education Law § 3101 are explicitly stated to be "[a]s used in this article".

The EIT provisions were not added to Education Law article 63 and do not cross reference to the definitions in section 3101. "Teachers" as used in the "set aside" provisions of the EIT sections (Education Law § 1950 [15] [a], [c]; § 3602 [27] [a], [c]) clearly was not intended to subsume educational professionals in supervisory positions. The "set aside" provisions earmark the first portion of EIT funds to improve the remuneration of first through third-year teachers whose salaries fall below median teachers' salaries, as determined under a formula based on pay scales of "full time classroom teachers" (Education Law § 1950 [15] [c]; § 3602 [27] [c]). The statutory EIT apportionment to local BOCES is also determined by reference to an aid ratio based upon aggregate members of full-time classroom teachers (Education Law § 1950 [15] [b]). So, at least for some purposes, "teachers" as used in the EIT legislation was not intended to encompass supervisory personnel.

Moreover, the indisputable goal of the entire EIT program was to provide some relief for that class of professional educators in the public schools whose compensation suffered from the budgetary constraints experienced in general by local school districts. While it is perhaps arguable that the targeted class was intended to include some personnel who were not engaged in full-time classroom instruction, it is highly unlikely that the Legislature, in enacting the EIT program, intended to benefit "the superintendent of schools, associate, district or other superintendents", all of whom are included within the definition of "teachers" in Education Law § 3101 (1). It follows from the foregoing that defendant, in fulfilling his statutory duty to "implement" the EIT legislation, could determine the class of eligible beneficiaries of the program more restrictively than the class of educators defined as "teachers" under Education Law § 3101 (1).

The remaining question before us, presented by defendant's appeal, is whether Supreme Court correctly held invalid on equal protection grounds that portion of the regulations (8 NYCRR 175.35 [e] [1] [i]) which extends eligibility to educators who are not full-time classroom teachers, excluding only those who are not members of teachers' bargaining units. In this regard, we find it unnecessary to resolve the point raised in the *amicus curiae* brief of the New York State School Boards Association that the challenged provision is subject to strict scrutiny equal protection review because it would impinge upon plaintiffs' freedom of association by deterring their

membership in collective bargaining organizations other than those representing teachers' bargaining units. We are hesitant to consider an issue raised in an *amicus* brief for the first time on appeal *(see, Matter of Lezette v Board of Educ.,* 35 NY2d 272, 282). In any event, we believe that the appropriate resolution of the issue may be reached under the less stringent rational basis standard of review, under which a discriminatory classification is examined to determine whether it bears a rational relationship to a legitimate State interest *(Matter of Shattenkirk v Finnerty,* 97 AD2d 51, 59, *affd on opn below* 62 NY2d 949). Parenthetically, a similar rational basis standard is applicable to a statutory challenge to an administrative regulation as arbitrary and capricious *(see,* CPLR 7803 [3]; *Matter of Meenagh v Dewey,* 286 NY 292, 306-307).

The uncontradicted facts alleged in the complaint and plaintiffs' affidavits establish that a significant number of plaintiffs and the members of the educators' organizations they represent are certified and tenured as teachers and actually teach several classes daily in addition to their supervisory duties as, e.g., departmental chairpersons and administrative assistants. Again, according to the uncontested averments in plaintiffs' papers, the duties performed by plaintiffs and their members are substantially identical to those performed by supervisory and administrative personnel in other nearby, if not adjoining, school districts in the same counties, who are eligible for EIT salary benefits solely because of membership in the same bargaining units as full-time classroom teachers in those districts. Plaintiffs' submissions also support the inference, equally uncontroverted, that whether in any given school district supervisory and full-time classroom instructional staff belong to the same bargaining unit does not follow any consistent pattern, and is largely attributable to historical accident as to how the school professionals in the district first organized for collective bargaining purposes.

Based upon the foregoing facts, plaintiffs have prima facie established a denial of equal protection. The record is devoid of any functional, economic or geographic basis for discriminating between plaintiffs and other supervisory and administrative professionals who are similarly situated in all material respects, except for the latters' inclusion in teachers' organization bargaining units, nor has defendant demonstrated that this distinction bears any rational connection to the primary objectives of the EIT legislation to relieve the economic hardship of underpaid educators without increasing the financial

burden of school districts *(see, Matter of Burrows v Board of Assessors,* 98 AD2d 250, 255, *mod* 64 NY2d 33, *see also, Weissman v Evans,* 56 NY2d 458, 464-466). The regulation is facially invalid in dictating a discriminatory distribution of finite, predetermined apportionments based upon a criterion irrelevant to any plausible statutory purpose. Thus, it cannot be justified as a response to budgetary constraints through the process of objective, necessarily imperfect line-drawing which only produces inequities in some individual cases *(cf., United States R. R. Retirement Bd. v Fritz,* 449 US 166; *Matter of Tolub v Evans,* 58 NY2d 1, 8-9, *appeal dismissed* 460 US 1076). Moreover, historical differences among school districts in the organization of supervisory professionals for collective bargaining purposes is insufficient as a matter of law to establish a rational basis for the distinction in eligibility for EIT salary benefits made by the regulation *(see, Weissman v Evans, supra,* at 464).

The only justification advanced by defendant for the conceded difference in treatment based upon membership in bargaining units is contained in paragraph 38 of the answer to the complaint, which first alleges that the primary purpose of the EIT program is to benefit full-time classroom teachers and that the EIT sections require that actual salary increases out of EIT funds are to be determined by collective bargaining, and then alleges, "upon information and belief", that, without the distinction drawn by the regulations, school districts would be "unduly burdened" and "the intent of the statute to benefit classroom teachers" would be frustrated by requiring the distribution of EIT funds to be the subject of bargaining with multiple employee organizations.

As to the suggestion that the legislative purpose to benefit classroom teachers under the EIT program affords a reasonable ground for the challenged discriminatory treatment, the illogic of this rationalization is self-evident. Having necessarily departed from the asserted primary EIT purpose to benefit only classroom teachers when he expanded eligibility to some administrators under 8 NYCRR 175.35 (e) (1) (i), defendant now seeks to justify the discriminatory manner in which he deviated from that purpose by invoking the purpose itself. This hardly constitutes a rational basis for the discrimination.

Equally untenable is the argument that avoiding the burden on school districts of multiple collective bargaining on the distribution of their EIT apportionments constitutes a rational basis for the denial of equal treatment to plaintiffs. Stripped

to its essentials, this argument is actually an attempt to justify the discrimination on the sole basis of administrative convenience or feasibility in collective bargaining. We may assume, without deciding, that such administrative convenience could have furnished a valid basis for a *legislative* judgment restricting EIT eligibility to educational administrators in teachers' collective bargaining units. Perhaps, as well, it could justify an administrative determination to the same effect if based upon an express legislative direction to defendant to consider the impact on collective bargaining in setting standards for eligibility. It should be pointed out, however, that even in such cases, there are limits on the extent to which administrative convenience may be invoked to save infringements of constitutional rights. The United States Supreme Court has so held in invalidating *statutory* standards for eligibility of students for tuition subsidies in State higher educational institutions *(Vlandis v Kline,* 412 US 441, 451-452).

In the instant case, however, the issue is a narrower one. The administrative convenience invoked here is not of defendant or the Education Department, but that of local school boards in collective bargaining. There is nothing in the language or legislative history of the EIT statutes suggesting that the administrative convenience of school districts in collective bargaining over who is to receive EIT subsidies was a legislative consideration, let alone an objective, in enacting the EIT program. Nor is there any reason to suppose that the Legislature intended to give defendant, whose field of responsibility and expertise is educational policy and not public employment collective bargaining, the discretion to set EIT eligibility standards on the basis of public sector collective bargaining policy factors. An administrative agency seeking to support a discriminatory regulation on the basis of considerations outside the scope of its general statutory mandate and specialized knowledge is not entitled to the deference which courts customarily give to agency determinations *(see, Hampton v Mow Sun Wong,* 426 US 88, 115; *see also, Bob Jones Univ. v United States,* 461 US 574, 611 [Powell, J., concurring]).

Even if we were dealing with the administrative convenience of defendant or the Education Department, defendant's showing would be inadequate to sustain the regulation here. In claiming administrative convenience as a rational basis for sustaining an agency regulation, the agency is required to demonstrate that it made a considered evaluation of the

benefits and burdens involved and of the feasibility of alternative methods for achieving the legitimate objectives of the regulation having a less discriminatory impact *(Hampton v Mow Sun Wong, supra,* at 115). Put another way, an agency may be called upon to explain the "rationale and *factual* basis for its decision" *(Bowen v American Hosp. Assn.,* 476 US 610, 627 [emphasis supplied]). An agency conducts itself arbitrarily and capriciously when its action is "taken without regard to the facts" *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 231).

The record here is entirely devoid of any demonstration either of the existence of a factual foundation for defendant's decision to limit EIT eligibility of school administrators to those within teachers' bargaining units for reasons of administrative convenience, or that the decision was the product of a considered evaluation of the administrative convenience factor as against fairer, alternative standards of eligibility. Indeed, the issue is not once addressed in defendant's supporting affidavits on the cross motions. Nor is there any indication that defendant consulted the Public Employment Relations Board, the State agency entrusted with the responsibility over the field of collective bargaining by school districts and other public employers *(see,* Civil Service Law § 205). Thus, the rationale advanced by defendant solely in a conclusory statement in the pleadings, "upon information and belief", that the classification was necessary in order to avoid burdening school districts with multiple collective bargaining over EIT benefits, is nothing more than the type of "hypothetical justification" for a discriminatory regulation condemned in *Hampton v Mow Sun Wong (supra,* at 116). Defendant's rationalization based on avoiding the burden on school districts is further belied by the fact that their representative, the New York State School Boards Association, has filed an *amicus curiae* brief urging the invalidity of the discriminatory provisions of 8 NYCRR 175.35 (e) (1) (i).

On the basis of the foregoing, we agree with Supreme Court's ruling that 8 NYCRR 175.35 (e) (1) (i) violates the Equal Protection Clauses of the Federal and State Constitutions in denying plaintiffs' eligibility for EIT salary supplements solely on the basis of nonmembership in a teachers' organization bargaining unit. We also agree that the appropriate remedy is a declaration of the invalidity of subdivision (e) (1) (i) of the regulation in its entirety, rather than merely the portion thereof conditioning eligibility on inclusion in such a bargaining unit *(see, Matter of Burrows v Board of Assessors,*

64 NY2d 33, 37). Because of the demonstrated hardship and fiscal confusion which would result from retroactive application of a declaration of invalidity, however, the judgment should be prospective only *(see, Foss v City of Rochester,* 65 NY2d 247, 260; *see also, Lemon v Kurtzman,* 411 US 192).

MAHONEY, P. J., WEISS, HARVEY and MERCURE, JJ., concur.

Order and judgment modified, on the law, without costs, by adding to the declaration of invalidity of 8 NYCRR 175.35 (e) (1) (i) that it shall be effective upon the date of the order to be entered upon this court's decision, and, as so modified, affirmed.