JOSEPH FORTI, Plaintiff, v NEW YORK STATE ETHICS COMMIS-
SION, Defendant.

Supreme Court, Albany County, February 8, 1989

### APPEARANCES OF COUNSEL

*Maynard, O'Connor & Smith* for plaintiff. *Robert Abrams,
Attorney-General,* for defendant.

### OPINION OF THE COURT

PAUL E. CHEESEMAN, J.

Plaintiff, an attorney since 1983, is duly licensed to practice

law in the State of New York and is a former employee of the Department of Environmental Conservation (hereinafter DEC). In September 1988 plaintiff resigned his position at DEC and accepted a position with an Albany law firm with the understanding that his legal practice would be limited to environmental matters.

At the time of his resignation, and we might note at the time plaintiff commenced his service with DEC, plaintiff's restrictions with respect to his practicing law before DEC were governed by Public Officers Law § 73 (former [7]), which prohibited plaintiff from representing clients in "relation to any case, proceeding or application with respect to which such person [plaintiff] was directly concerned and in which he personally participated during the period of his service or employment" (Public Officers Law § 73 [former (7)]).

On August 7, 1987, Governor Mario Cuomo approved enactment of a law known as the "Ethics in Government Act" (L 1987, ch 813). This voluminous statute created a number of new restrictions relating to various classes of public employees. The Act also created the defendant Commission within the Department of State.

The Commission is empowered to receive sworn complaints concerning possible violations of Public Officers Law § 73 (8), investigate such complaints and, if necessary, internally adjudicate such matters (L 1987, ch 813, § 7; Executive Law § 94 [12] [a], [b]).

Under the new Act, specifically subdivision (8), governmental employees were classified into three groups. The categories are: (1) State officers and employees, and (2) legislators, and the new category which includes, for the first time, a (3) third class consisting of legislative employees.

The proscriptions on the first class of State officers and employees were substantially broadened under the new Act. The two-year suspension period for those matters with which a former State employee was directly involved was extended to a lifetime prohibition and the types of matters to which the prohibition applied was expanded from "any case, proceeding or application" to also include "transaction[s]". In addition, the Legislature created a new two-year proscription period which applies only to the first category and which prevents an individual from appearing or representing any interest before his or her former employer or agency.

The plaintiff commenced this action by summons and com-

plaint dated December 29, 1988 seeking declaratory judgment asking this court to (1) declare the Ethics Commission advisory opinion No. 88-1 to be null and void; (2) declare that section 73 of the Public Officers Law be applied only prospectively; or (3) that the section does not apply to those State officers or employees who terminated State service prior to January 1, 1989; (4) declare that the two-year ban of subdivision (8) of amended section 73 of the Public Officers Law is unconstitutional as applied to State officers and employees because it violates the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the US Constitution and NY Constitution, article I, §§ 11 and 6; and lastly to declare subdivision (8) of the amended section 73 of the Public Officers Law unconstitutional as violative of the doctrine of separation of powers as applied to attorneys, and all other officers of the courts of the State of New York.

Thereafter, the plaintiff moved for summary judgment on February 6, 1989, and argument was heard on February 7, 1989.

The State argues that the application of section 73 (8) of the Public Officers Law is not being applied to the petitioner or other persons similarly situated in a retroactive manner.

In discussing the constitutional implications of the provisions of the Ethics in Government Act, specifically the classification of the three categories of government employees, it is incumbent upon the court to examine whether the classification bears a rational relationship to the legitimate State interest that the legislation seeks to implement. *(Matter of Shattenkirk v Finnerty,* 97 AD2d 51, 59, *affd on opn below* 62 NY2d 949.)

The defendants by their own admission labeled the Act remedial in purpose and assert that Gov. Cuomo's statement of August 7, 1987 wherein he approved the ethics in government bill appropriately states the legislative purpose where he said, "I am signing into law two sweeping reforms that constitute the foundation of our efforts to *restore public trust* and *confidence in government."* (1987 McKinney's Session Laws of NY, at 2727 [emphasis added].) The Attorney-General in defense also states that the Act was created to avoid unfair advantage or the appearance of unfair advantage by former State employees, legislators and legislative employees who then would enter the private sector and thereafter represent clients or their clients' interest before a State governmental

body. This is what is commonly referred to as the "revolving door" syndrome.

In anticipation of just such a dilemma as the plaintiff finds himself in, the New York State Ethics Commission rendered an advisory opinion No. 88-1 on November 21, 1988, wherein they held that the new prospective restrictions of Public Officers Law § 73 (8) apply to all former State employees or officers who appear before agencies on January 1, 1989 and thereafter. This opinion did not pertain to legislators or legislative employees who represented clients and/or their clients' interest before State government after January 1, 1989.

The Attorney-General argues that the Ethics Act simply changed a condition of employment of State employees, effective January 1, 1989. Plaintiff argues that the State cannot change the conditions of his employment after he has left State service. He argues that, in so doing, they have retroactively affected his employment with the State. Despite the obvious appearance that the defendants are changing the "rules of the game", after it has started the courts of this State have held that subject to close scrutiny the State is empowered to alter terms and condition of employment with infringing on the rights of citizens as guaranteed by the New York State Constitution (*Cook v City of Binghamton,* 48 NY2d 323; *New York State Coalition for Criminal Justice v Coughlin,* 103 AD2d 40; *Matter of Foley v Nelson,* 128 AD2d 92, 95).

Despite this authority, it has been held that where a law such as Laws of 1987 (ch 813, § 2) would have retroactive effect, the courts must scrutinize the legislation more closely to examine " 'whether the law is reasonably calculated to serve a compelling public interest * * * and the extent to which retrospective application creates unfairness' ". (*Medical Malpractice Ins. Assn. v Cuomo,* 138 AD2d 177, 182; *Niagara Recycling v Town of Niagara,* 83 AD2d 316, 326; *accord, Peoples Sav. Bank v County Dollar Corp.,* 43 AD2d 327, *affd* 35 NY2d 836.)

Moreover, as the court in *Medical Malpractice Ins. Assn. v Cuomo (supra)* stated, retroactive legislation may not impair or destroy vested rights. (*Medical Malpractice Ins. Assn. v Cuomo, supra; Matter of McGlone,* 284 NY 527, 533.) The defendant argues that the plaintiff had no vested right in his position at DEC or the right to appear before that agency subsequent to his resignation. It is not disputed that he is an attorney duly licensed to practice in the State of New York.

This court is of the opinion that the plaintiff became vested in a substantial right upon his being admitted to practice law in the State of New York. And that his expectations to be entitled to practice law are legitimate property rights protected by the Fourteenth Amendment to the US Constitution *(Board of Regents v Roth,* 408 US 564). That property interest which the plaintiff has and continues to rely upon "must not be arbitrarily undermined" *(Board of Regents v Roth, supra,* at 577; *Medical Malpractice Ins. Assn. v Cuomo, supra,* at 183).

Having now determined that the statute requires certain constitutional scrutiny, we have reviewed the classification of the three types of employees, i.e., State employees, legislators and legislative employees. It is indisputable that legislators and legislative employees have considerably less restriction upon their engaging in either the practice of law, lobbying or representing other clients with respect to State government than plaintiff and those in his class.

The record before us is devoid of any functional, economic or geographic basis for discriminating between plaintiff and legislative employees *(Weissman v Evans,* 56 NY2d 458; *Schneider v Ambach,* 135 AD2d 284). Nor has the defendant demonstrated that the distinction between State employees, such as the plaintiff, and legislative employees bears any rational connection to the primary objectives of the Ethics in Government Act that is to restore public trust and confidence in government and to avoid unfair advantage or the appearance of unfair advantage *(Schneider v Ambach, supra,* at 288). As in the *Schneider* case, the regulation is invalid on its face by dictating a discriminatory application of the restrictions placed upon State employees such as the plaintiff in contrast to those placed upon legislative employees without any relevant application to the statutory purpose. *(Schneider v Ambach, supra,* at 289.)

The State argues that the distinction was drawn because the plaintiff would be limited to being prohibited from appearing only before the agency for which he worked, whereas a legislative employee who has worked with the larger body, i.e., the Legislature, cannot have restrictions so narrowly drawn. The distinctions between the State employees and the legislative employees are therefore based upon an administrative determination. As Justice Levine stated in *Schneider v Ambach (supra,* at 290), there are "limits on the extent to which administrative convenience may be invoked to save infringe-

ments of constitutional rights" *(see also, Vlandis v Kline,* 412 US 441).

The defendant has failed to demonstrate a rational basis for the distinction between State employees and legislative employees in view of the statutory purpose of the Ethics in Government Act. Clearly, if the purported purpose of the Ethics in Government Act is to regulate the revolving door syndrome, certainly members of the Legislature and their employees engage in this activity to no greater or lesser degree than former State officers or former State employees, many of whom were not political appointees but were civil service employees who worked for a State agency.

Accordingly, the defendants have failed to adequately demonstrate a constitutional basis to distinguish between State officers and State employees and those who have previously worked for the Legislature, and accordingly, the plaintiff's motion for summary judgment declaring that part of the Ethics in Government Act (Public Officers Law § 73 [8]) to be unconstitutional and in violation of the Fourteenth Amendment to the US Constitution and to NY Constitution, article I, § 6 is granted.

The above having been dispositive of the action, we decline to address the other issues asserted by the plaintiff.