JOSEPH FORTI, Respondent, v NEW YORK STATE ETHICS COM-
MISSION, Appellant.

Third Department, June 15, 1989

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Denise A. Hartman* of counsel), for appellant.

*Maynard, O'Connor & Smith (Cory C. Kirchert* of counsel), for respondent.

## OPINION OF THE COURT

MAHONEY, P. J.

In August 1987, the Ethics in Government Act (L 1987, ch 813) (hereinafter the Act) was enacted "[t]o enhance public trust and confidence in our governmental institutions [by strengthening] prohibitions against behavior which may permit or appear to permit undue influence or conflicts of interest" (Governor's Program Bill mem, Governor's Bill Jacket, L 1987, ch 813). To further this goal, the Act, *inter alia,* extended existing limitations and imposed additional restrictions

on the professional and business activities following separation from State service of (1) State officers or employees, (2) members of the Legislature, and (3) legislative employees (L 1987, ch 813, § 2). Specifically, whereas Public Officers Law § 73 former (7) prohibited State agency officers and employees from appearing before their agency or receiving any compensation for any service on matters in which they personally participated for two years after their State service ended, the Act renumbered and amended this statute to prohibit State officers and employees from appearing or practicing before their agency or receiving any compensation for any service on any matter before their agency for two years after leaving State service and to bar permanently former State officers and employees from rendering any services before any State agency or receiving compensation for any services in any matter in which they were personally involved during State service (Public Officers Law § 73 [8], as amended by L 1987, ch 813, § 2). The Act imposed a prohibition on members of the Legislature from receiving compensation for lobbying for two years after their term of service ends (§ 73 [8], as amended). Also, the Act imposed a prohibition on legislative employees from receiving compensation for lobbying on matters in which they were personally involved during the remainder of the legislative term in which their employment ended although supervisory legislative employees could be exempted from prohibitions (§ 73 [8], as amended). These restrictions, commonly referred to as the revolving door provisions, generally became effective on January 1, 1989 (L 1987, ch 813, § 26) but "with respect to legislative employees shall apply only to such employees who terminate their service or employment on or after January first, nineteen hundred eighty-nine" (L 1987, ch 813, § 26 [a]).

Among other provisions, the Act also created defendant, the State Ethics Commission, which is, *inter alia,* charged with issuing advisory opinions on the Act's revolving door provisions as they affect State officers and employees (Executive Law § 94 [1], [15], as added by L 1987, ch 813, § 7). Pursuant to this authority, on November 21, 1988, defendant issued Advisory Opinion 88-1 which concluded that the revolving door provisions of Public Officers Law § 73 (8) apply to those State officers and employees who left State service prior to January 1, 1989, but only with regard to activities occurring on or after January 1, 1989. Defendant reasoned that since the Legislature specifically applied these revolving door provisions only

to legislative employees who left State service on or after January 1, 1989 without any similar application for State officers and employees (L 1987, ch 813, § 26 [a]), the Legislature intended all State officers and employees who left State service prior to January 1, 1989 to be subject to the revolving door provisions of Public Officers Law § 73 (8). Defendant further supported this opinion by concluding that these new revolving door provisions effectively repealed the old restrictions contained in Public Officers Law § 73 former (7) so that any other interpretation would have left State officers or employees who left State service prior to January 1, 1989 without coverage by any revolving door provisions, a result obviously contrary to the Legislature's objectives.

Plaintiff was a State officer or employee by virtue of his service as an attorney for the Department of Environmental Conservation (hereinafter DEC) (see, Public Officers Law § 73 [1] [i] [iii], as amended by L 1987, ch 813, § 2). In September 1988, after the Act's enactment but before its January 1, 1989 effective date, plaintiff left State service to work for a law firm as director of its newly created environmental law department. Upon defendant's issuance of Advisory Opinion 88-1, plaintiff recognized that he would be considered subject to the revolving door provisions of Public Officers Law § 73 (8), preventing him from appearing or practicing before DEC from January 1, 1989 until September 1990, among other restrictions. Accordingly, plaintiff commenced this declaratory judgment action alleging that these prohibitions impair his ability to earn a living as his continued employment with the law firm is endangered. Plaintiff claimed that the revolving door provisions of section 73 (8) should be applied only to State officers and employees who left State service on or after January 1, 1989 and, even if applicable to those who left before such date, are unconstitutional under principles of equal protection, due process and separation of powers. Plaintiff sought a judgment making declarations in accordance with his contentions.

After defendant answered, plaintiff moved for summary judgment. Defendant opposed the motion for basically the reasons advanced in Advisory Opinion 88-1, adding, inter alia, that the challenged provisions have a strong presumption of validity which plaintiff did not overcome and that the Legislature's authority to make classifications refuted any alleged equal protection violation. Supreme Court granted plaintiff's motion and declared that Public Officers Law § 73 (8) violates

the Federal and State Equal Protection Clauses because there is no rational basis for the different revolving door restrictions on State officers and employees and legislative employees (142 Misc 2d 702). In so holding, Supreme Court must have implicitly determined that section 73 (8) applies to State officers and employees who left State service prior to January 1, 1989, for otherwise the court would have had no reason to reach the constitutional issues. Defendant now appeals.

■ Our initial inquiry is addressed to the issue not explicitly discussed by Supreme Court—whether Public Officers Law § 73 (8) applies to State officers and employees who left State service prior to January 1, 1989. This involves a question of statutory interpretation, in which the primary consideration is legislative intent (see, McKinney's Cons Laws of NY, Book 1, Statutes §§ 92, 191; *Matter of Sutka v Conners,* 73 NY2d 395, 403). Of course, legislative intent must be determined by first considering the express terms of the statute and, failing that, by inquiring into "the spirit and purpose of the legislation" *(Matter of Sutka v Conners, supra,* at 403). The revolving door provisions expressly apply to any "person who *has served* as a state officer or employee" (Public Officers Law § 73 [8] [emphasis supplied]). Contrary to defendant's contention, the words "has served" are not dispositive of this issue. These words can reasonably apply to any individual who was but is no longer a State officer or employee regardless of whether their State service ended before, on or after January 1, 1989. Thus, this express statutory language is not dispositive of legislative intent on the applicability issue.

The Legislature did, however, specifically state that the revolving door provisions of Public Officers Law § 73 (8) apply only to legislative employees who left or leave State service on or after January 1, 1989 (L 1987, ch 813, § 26 [a]). Thus, the Legislature clearly considered which categories of public servants who left State service before January 1, 1989 are subject to section 73 (8). By specifically not according State officers and employees the same treatment as legislative employees, the Legislature evidently intended the former category of public servants to be treated differently from the latter category *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 240). This leads to the conclusion that State officers and employees who left State service prior to January 1, 1989 are subject to Public Officers Law § 73 (8).

■ ■ This conclusion is supported by the legislation's purpose, spirit and surrounding circumstances. For example, it is

apparent that Public Officers Law § 73 (8) repealed by implication Public Officers Law § 73 former (7), so that if section 73 (8) did not apply to State officers and employees who left State service prior to January 1, 1989, no revolving door provisions would govern their conduct. Although repeals by implication are not favored *(see, e.g., Alweis v Evans,* 69 NY2d 199, 204), an amendment which covers the entire subject is deemed to repeal the previous omitted parts by implication *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 399; *see also, Randall v Bailey,* 288 NY 280, 289). As a sweeping reform imposing a comprehensive ethics code *(see,* Governor's mem, 1987 McKinney's Session Laws of NY, at 2727), the Act was clearly intended to cover the field so that previous omitted provisions, such as Public Officers Law § 73 former (7), were repealed. Considering the Legislature's long-standing commitment to ethics legislation *(see, e.g.,* L 1954, chs 695, 696), it could not have intended to leave those State officers and employees who left State service before January 1, 1989 outside the ambit of any revolving door provisions. Repeal of Public Officers Law § 73 former (7) is further indicated by the Legislature's direction that the Act's amendments to this former subdivision will be "null and void" and the former subdivision "shall be deemed revived" upon a judgment invalidating any portion of the Act's amendments to Public Officers Law § 73 (10) (L 1987, ch 813, § 19). The express intention for revival indicates that Public Officers Law § 73 former (7) was repealed *(see,* 56 NY Jur, Statutes, § 102, at 580 [1967]).

This conclusion does not make application of Public Officers Law § 73 (8) retroactive and thus contrary to the fundamental principle that statutes should be applied prospectively absent a clear indication otherwise, as suggested by plaintiff. "A statute is not retroactive * * * when made to apply to future transactions, merely because such transactions relate to and are founded upon antecedent events" (McKinney's Cons Laws of NY, Book 1, Statutes § 51, at 87). Although Public Officers Law § 73 (8) is intended to apply to State officers and employees who left State service before January 1, 1989, it only affects conduct occurring on or after that date so it is not truly retroactive. Plaintiff's argument that our interpretation of section 73 (8) creates a harsh result by prohibiting him from appearing or practicing before DEC for a lengthy period is rejected. The law does not prevent plaintiff from practicing his chosen profession or even his specialty of environmental law. Indeed, plaintiff can perform an infinite vari-

ety of activities, including appearing in court against DEC, so long as he does not appear or practice before the agency during the specified time or breach any of the other prohibitions. Plaintiff's other arguments on this issue do not convince us otherwise.

Having determined that the revolving door provisions of Public Officers Law § 73 (8) apply to plaintiff, it remains to consider his constitutional objections. Plaintiff first contends and Supreme Court concluded that tougher revolving door restrictions on State officers and employees than on legislators and legislative employees violate the Equal Protection Clauses of the US and NY Constitutions.* Plaintiff contends that there is no rational basis to place greater restrictions on former State officers and employees than on legislators or legislative employees. Plaintiff argues that tougher postemployment restrictions are required on legislative public servants than State officers and employees to ensure that the public is aware of the efforts to ensure good government. Plaintiff also argues that any institutional mechanism, such as direct public accountability through elections, offered to justify fewer postemployment restrictions on legislative public servants merely highlights ethical problems after the fact but does not deter their occurrences.

Defendant counters that the different classifications are rationally based on institutional differences between the administrative and legislative processes which relate to the Act's undisputed legitimate goals. For example, defendant claims that less onerous revolving door provisions for legislative employees are justified because legislation must be passed by two legislative chambers and approved by the Governor, so that any influence by a former legislative employee is diluted as compared to former State officers and employees whose impact can be made to bear more directly on a single or relatively few administrative decision makers. Additionally, defendant contends that the Legislature, unlike executive agencies, answers to the public every two years so that any influence by former members or legislative employees is further diluted. Defendant essentially concludes that these institutional differences justify less onerous restrictions on former legislative public servants than on State officers or employees.

As with any legislative enactment, we presume constitution-

---

* The challenge does not encompass the differences in the classification of legislator and legislative employee and we confine our analysis accordingly.

ality and, as the parties do not claim that a fundamental right or suspect class is at issue, we must uphold the law against plaintiff's equal protection challenge if the legislative classifications are rationally based *(see, e.g., Hymowitz v Lilly & Co.,* 73 NY2d 487, 515). Of course, plaintiff bears the heavy burden of proving unconstitutionality beyond a reasonable doubt *(see, e.g., Rochester Gas & Elec. Corp. v Public Serv. Commn.,* 71 NY2d 313, 319-320). In considering plaintiff's objections to Public Officers Law § 73 (8), it seems to us that they address the adequacy and efficacy of the Legislature's enactment and do not prove beyond a reasonable doubt the absence of a rational basis for the classifications. In equal protection analysis, we are not concerned with the wisdom or effectiveness of a legislative enactment but only with the narrow issue of its rationality *(see, e.g., Maresca v Cuomo,* 64 NY2d 242, 249, *appeal dismissed* 474 US 802).

In accordance with this limited scope of review, we believe that the Legislature could rationally determine that public servants' postemployment restrictions should be a function of the institutional checks endemic to a particular governmental process which encourage ethical conduct. It is logical that as the number or effectiveness of mechanisms to encourage ethical conduct in the particular process of government increase, fewer postemployment restrictions should be necessary to encourage or accomplish a particular level of actual or apparent ethical conduct. With regard to the governmental processes at issue, a function of the legislative process is that the Legislature must answer to the voters every two years. Such public accountability, absent at even the highest levels of the administrative processes, can reasonably be considered as the ultimate institutional check on the conduct of legislators and legislative employees. Likewise, enacting a law requires approval not only by two legislative chambers but by the executive, a distinct branch of government, so that the opportunity for influence and conflict on any particular issue is diminished. The administrative process, by contrast, is characterized by relatively few decision makers, generally working in a single agency, so that the potential for improper conduct is more concentrated.

Even in areas where the legislative process is less constrained than the administrative process, the differences are relatively small. For example, although one Legislature is not bound by the acts of any previous one (McKinney's Cons Laws of NY, Book 1, Statutes § 2) and administrative agencies are

bound by stare decisis in quasi-judicial determinations *(see, e.g., Matter of Field Delivery Serv. [Roberts]*, 66 NY2d 516), many administrative determinations are legislative in nature rather than quasi-judicial *(see, e.g.,* State Administrative Procedure Act § 201 *et seq.)* so that the limitations described do not apply consistently or absolutely. Based on these institutional differences, the Legislature could rationally conclude that the legislative process has more numerous and efficient institutional checks on unethical conduct than the administrative process so that fewer and less onerous revolving door restrictions on legislative public servants than on State officers and employees are warranted. From this perspective, the different classifications satisfy the rational basis test.

Plaintiff also complains that the exclusion of only legislative employees who left State service before January 1, 1989 from coverage under Public Officers Law § 73 (8) (L 1987, ch 813, § 26 [a]) constitutes an unconstitutional classification. As discussed above, there is a rational basis to classify State officers and employees differently from legislative employees. Similarly, the obviously more important functions endowed to legislators than to legislative employees constitute a rational basis to treat the former category of public servants more strictly than the subordinate legislative employees. Accordingly, there is no equal protection violation in this regard.

■ Plaintiff next argues that the revolving door provisions prevent him from pursuing his professional employment to the fullest extent possible so that his due process rights under the US and NY Constitutions have been violated. Due process rights do not allow unrestricted activity and, in the exercise of its police power, the State has authority to reasonably condition the conduct of businesses *(Rochester Gas & Elec. Corp. v Public Serv. Commn., supra,* at 322) and prescribe qualifications on the practice of law *(Sweeney v Cannon,* 23 AD2d 1, 3, *mod on other grounds* 30 NY2d 633). The restrictions at issue do not deprive plaintiff of his right to practice law but merely impose reasonable, limited restrictions in order to promote a legitimate concern of the State. Therefore, we conclude that there is no due process violation.

■ Plaintiff also challenges Public Officers Law § 73 (8) as a violation of the doctrine of separation of powers. Plaintiff contends that the law intrudes upon the judiciary's authority over the conduct of attorneys and constitutes an impermissible delegation of authority to defendant over the conduct of attorneys. There is no merit to these claims. The Legislature

has traditionally regulated various aspects of attorneys' conduct *(see,* Judiciary Law § 90; art 15) and there is no reason to question this authority now. The Legislature also has the power to delegate authority to administrative agencies so long as there are adequate standards for administration *(see, e.g., Boreali v Axelrod,* 71 NY2d 1, 10). Considering the comprehensiveness of the Act, we see no constitutional problem here. In the absence of any successful constitutional challenge, summary judgment in favor of defendant is warranted, even though it did not move for summary judgment before Supreme Court *(see, County of Broome v Aetna Cas. & Sur. Co.,* 146 AD2d 337, 340, n 2), and we make the appropriate declarations in defendant's favor *(see, Maurizzio v Lumbermens Mut. Cas. Co.,* 73 NY2d 951, 954).

WEISS, MIKOLL, YESAWICH, JR., and LEVINE, JJ., concur.

Order reversed, on the law, without costs, plaintiff's motion for summary judgment denied, summary judgment granted to defendant and it is declared (1) that Public Officers Law § 73 (8) applies to State officers and employees who left State service before January 1, 1989, and (2) that said statute has not been demonstrated to be unconstitutional.