*312 OPINION OF THE COURT
Bellacosa, J.
Excellence In Teaching (EIT) is a State-wide program created in 1986. To implement EIT objectives, State funds are annually appropriated "to improve salaries for teachers” (Education Law § 1950 [15] [a]; § 3602 [27] [a]). Plaintiffs are school principals, department chairpersons and other school administrators primarily, who also teach but who are paid as administrators. They challenge the regulation of the Commissioner of Education defining an "eligible teacher” for EIT purposes as anyone who teaches class and is compensated under teachers’ salary schedules. The regulation excludes from eligibility those who, while also teaching, are primarily administrators compensated under an administrative or supervisory salary schedule (8 NYCRR 175.35 [e] [1] [i]). The courts below upheld the challenge of plaintiffs — the excluded ineligible groups and individuals — on State and Federal equal protection grounds (US Const 14th Amend; NY Const, art I, § 11). On the Commissioner’s and intervenor New York State United Teachers’ (NYSUT) appeals as of right, we reverse and declare the regulation constitutional, as it draws a rational categorization serving the objectives of the EIT statute.
As part of the 1986 aid-to-localities State budget, the Legislature and the Governor established and appropriated money for the EIT program to supplement the salaries of teachers throughout the State, employed by local school districts and boards of cooperative educational services (BOCES) (see, Edu *313 cation Law § 1950 [15]; § 3602 [27], as added by L 1986, ch 53, §§20, 49). The goal was to promote the recruitment and retention of quality teachers by providing supplementary compensation to offset budget shortfalls experienced by local school districts and BOCES. Initially, funds are "set aside” to increase the salaries of first-, second- and third-year teachers whose salaries fall below certain median salary figures; then, remaining funds are used "to improve salaries for teachers * * * in general” (Education Law § 1950 [15] [a]; § 3602 [27] [a]). The Legislature specified that EIT moneys were to be distributed to eligible teachers — undefined in the statute— through negotiations between the individual school districts or BOCES and the certified or recognized collective bargaining agents in each district (see, Education Law § 1950 [15] [a]; § 3602 [27] [a]; see also, Matter of Board of Educ. v Watertown Educ. Assn., 74 NY2d 912; Matter of City School Dist. v New York State Pub. Employment Relations Bd., 74 NY2d 395). The average salary supplement to each full-time teacher for the 1988-1989 EIT apportionment was estimated between $600 and $800. This litigation attacked the regulation only insofar as it affects the allocation of the residual funds available to supplement salaries of "teachers * * * in general”.
The statute directs the Commissioner of Education to adopt implementing regulations, subject to the approval of the Director of the State Division of the Budget (Education Law § 1950 [15] [f]; § 3602 [27] [f]). Pursuant to this authority, in the absence of a statutory definition and keyed to the specific objectives of this program, the Commissioner attempted to define the universe of teaching personnel in the widely diverse school districts and BOCES. Those qualifying to receive EIT funds under the Commissioner’s definition of an "eligible teacher” are: "[A] school employee who provides nonsupervisory educational services * * * under one of the following teachers’ certificates or licenses issued pursuant to Part 80 of this Title or in a comparable position in the city school districts of New York or Buffalo, provided that such term shall not include a school employee who is compensated for such educational services under an administrative or supervisory salary or salary schedule” (8 NYCRR 175.35 [e] [1] [i] [emphasis added]).
Two categories of educators thus qualify for the EIT supplements: (1) full-time teachers who are paid as such; and (2) educators who teach and are compensated under teachers’ salaries schedules, plus a stipend for additional administrative *314 duties they may also perform. A third category — plaintiffs included — are expressly ineligible, as they are some-time teachers deemed, however, to serve principally in administrative and supervisory capacities by reason of their being compensated under administrative salary schedules.
The gravamen of plaintiffs’ equal protection claim, on their own and their professional organizations’ behalfs, is that the combined duties performed by educators in their disenfranchised group do not vary from the combined duties performed by the educators in the eligible group, who just happen to be paid differently from them, i.e., on teachers’ salaries schedules. Plaintiffs argue that the method of compensation is a differentiation without a difference for BIT purposes, and treats similarly functioning persons unequally and, therefore, unconstitutionally.
Supreme Court, on cross motions for summary judgment, granted plaintiffs’ motion and declared the regulation invalid. The judgment was given prospective effect only. On cross appeals, the Appellate Division upheld the lower court’s invalidation of the regulation but modified to reinforce the prospective effective date. The Commissioner and NYSUT appealed as of right, and we now reverse, grant defendants’ cross motion for summary judgment, and declare the regulation constitutional. The plaintiffs’ cross appeal should thus be dismissed as academic.
No one disputes that the "rational basis” test governs here. In such instance, " 'it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality” ’.” (Alevy v Downstate Med. Center, 39 NY2d 326, 332, quoting Dandridge v Williams, 397 US 471, 485.) We have said that "[ijf any conceivable state of facts will support the classification, said provisions will not be held violative of the equal protection clause” (Maresca v Cuomo, 64 NY2d 242, 250 [emphasis added]; see also, Matter of Doe v Coughlin, 71 NY2d 48, 56-57). The challenged regulation draws a legitimately discrete line, having a fair and substantial relationship to the purposes of the BIT legislation. Thus, despite varying imprecisions which may be hypothesized, this case satisfies the governing precepts.
The BIT program provides finite apportioned funds to local school districts and BOCES, with the paramount purpose "to improve salaries for teachers” (Education Law § 1950 [15] [a]; *315 § 3602 [27] [a] [emphasis added]), in order to relieve the economic hardship of underpaid educators without increasing the financial burden of school districts. A potent nucleus of the Commissioner’s argument is the uncontroverted evidence that the average salaries of school administrators as a group are consistently higher than comparable salaries of teachers as a group. It is not irrational or illogical for the Commissioner to exclude from eligibility for EIT salary enhancements those educators who primarily serve as administrators and supervisors, as determined by their administrator’s compensation categorization, even though they happen also to teach. All professional educators who provide education services to pupils under a teaching certificate, who are paid categorically as teachers, are eligible for EIT enhancements under the regulation, even though some of them also perform some administrative duties. The key for all these eligible teachers is that they are compensated alike under a generic full-time teachers’ salaries categorization. The randomness, fortuity or historically accidental nature of some of the salaries and categorizations are thus irrelevant features and variations under the governing precepts of the rational basis test. The regulation, in order to avoid chaos from the myriad of differing teaching and teaching-type jobs all over the State and in order to expand eligibility consistent with the purposes of the legislation, pivots essentially and primarily on "salaries for teachers”, a root phrase found in the enabling statute itself, and on the teaching function as identified in part by the form of compensation categorization. Courts have no basis to brand such a regulation irrational, inasmuch as it is keyed to the identified State interest of enhancing the salaries of underpaid teachers and enjoys a presumptive constitutionality at the threshold as well.
The context and stage of this litigation also provide illumination on and confirmation of our decision. This is the second time plaintiffs have challenged the Commissioner’s regulatory definition of "eligible teacher” under the EIT statute. The first regulation, adopted in the summer of 1986 after EIT became law, had tied EIT apportionment eligibility to membership in teachers’ bargaining units. The Appellate Division affirmed a lower court’s determination, finding the initial regulation invalid on equal protection grounds (Schneider v Ambach, 135 AD2d 284). Notably, in the prior litigation, the Appellate Division determined that the Commissioner was not mandated by statute to extend EIT eligibility to administrators and *316 supervisors at all (id., at 286), and that the Commissioner, in fulfilling his statutory duty to implement the EIT legislation, could determine the class of eligible EIT beneficiaries more restrictively than the class of educators defined as "teacher” under the Education Law (see, Education Law § 3101 [defining teachers to include supervisors and administrators]; Schneider v Ambach, 135 AD2d, supra, at 287). The Appellate Division, however, went on to find a denial of equal protection based upon a lack of "any functional, economic or geographic basis” to distinguish between the plaintiffs and those supervisors or administrators who were members of teachers’ bargaining units (id., at 288). That determination was not further appealed and the Commissioner went back to the drawing board to craft the regulation now before us.
On this appeal, the Commissioner and NYSUT assert that the new regulation creates a functional and economic predicate for EIT eligibility which is authorized and consonant with the statutory language and the legislative intent which spurred the creation of EIT. We conclude they are correct because the line drawn between those paid as administrators and those paid as teachers, based on the categorical compensation method, is a distinction keyed at least somewhat proportionately to empirical data and is designed to assure that the essential statutory purpose of providing supplements to the salaries of teachers, as underpaid educators, is achieved. Moreover, the Commissioner’s line-drawing based on the uncontroverted evidence also preserves the residual EIT funds for the "teachers-in-general” group and reduces the diversion of these limited funds away from needy targeted teachers, paid as such, to relatively more highly compensated school administrators, paid as such.
The Commissioner’s authority to adopt regulations implementing and fairly executing the EIT program in a manner consistent with the statute’s stated purpose is broad. The categorizations he has finally evolved find support, too, in the legislative history of the EIT statute. The issue of whether teaching administrators, in gross, were entitled to EIT supplements was hotly debated and ultimately rejected by the Legislature (see, Bill Jacket, L 1986, ch 53). So, the selection of "teachers’ salaries” compensation schedules as the line of demarcation, allowing only some teaching administrators to qualify, is not bereft of legislative justification; rather, it is consistent with the words, history and intent of the statute.
*317 An additional observation may be helpful. The distribution made under the regulatory definition is not arbitrary or capricious, but rather serves both functional and economic purposes. Because educators who are paid administrative salaries receive those salaries undifferentiated to the tasks performed, there is no practical method of determining the portion earned respectively for administrative duties and the portion received for teaching. On the other hand, eligible teachers under the challenged regulations, who receive teachers’ salaries plus stipends for performing additional and separate administrative duties, can be sorted out consonantly with the purposes of this important legislation.
We conclude, therefore, that the distinction made in the regulation is rationally related to the empirical data available and to the legislative intent behind the EIT program, which is to use State funds to augment the salaries of underpaid teachers qua teachers. The regulation should be upheld. To strike down the Commissioner’s action because he benefited more teachers than he absolutely had to, on the ground that he should have included even more people would be ironic and wrong. The EIT program should now proceed as intended and formulated, with only those designated eligible teachers who are paid categorically as teachers receiving EIT salary supplements.
Accordingly, the order of the Appellate Division should be reversed, with costs to defendant and intervenor-defendant; plaintiffs’ motion for summary judgment should be denied; and defendants’ cross motion for summary judgment should be granted, and 8 NYCRR 175.35 ’ (e) (1) (i) declared constitutional. Plaintiffs’ cross appeal should be dismissed as academic.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order reversed, with costs to defendant and intervenor-defendant, plaintiffs’ motion for summary judgment denied, defendants’ cross motion for summary judgment granted, and 8 NYCRR 175.35 (e) (1) (i) declared constitutional. Cross appeal dismissed as academic in view of the disposition of the appeal.